18180

Delia A. SOLA, Administratrix of the Estate of Fernando Sola, Carlos Fernando Sola and Jose Albert Sola, Respondents, v. SUNNY SLOPE FARMS and United States Fidelity & Guaranty Company, Appellants.

(135 S. E. (2d) 321)

8

*Messrs. Thomas W. Whiteside,* of Spartanburg, and *A. Ray Godshall,* of Gaffney, *for Appellants,*

*Messrs. Simpson Hyatt,* of Spartanburg, and *Reynolds & Laratonda,* of Coral Gables, Florida, *for Respondents,*

March 10, 1964.

Moss, Justice.

Carlos Fernando Sola and Jose Albert Sola, the respondents herein, who are dependent children of Fernando Sola, filed with the South Carolina Industrial Commission a claim for benefits under the Workmen's Compensation Law, Section 72-1 *et seq.,* Code of 1962, asserting that his death resulted from an accident arising out of and in the course of his employment with Sunny Slope Farms. The employer admitted that it was subject to and bound by the terms of the Act but denied that the employee sustained an injury, resulting in his death, by accident arising out of and in the course of his employment. The Hearing Commissioner found that Fernando Sola lost his life when struck by a Southern Railway train on June 5, 1961, and that such accident arose out of and in the course of his employment

and awarded compensation therefor. The employer and its insurance carrier made timely application for a review of this award before the Full Commission. The order of the Single Commissioner was affirmed by a majority of the Full Commission. Thereafter, an appeal was duly taken by the employer, and its insurance carrier, to the Court of Common Pleas for Cherokee County, South Carolina. This appeal was heard by the Honorable Bruce Littlejohn, Resident Judge of the Seventh Circuit, who, on October 3, 1963, issued his order affirming the decision and award of the commission. Timely appeal to this Court followed. The single exception of the employer and carrier, the appellants herein, raises the question of whether the death of Fernando Sola was the result of an accident which arose out or in the course of his employment.

We have held in numerous cases that the burden is upon the claimants to prove such facts as will render the injury and ensuing death compensable within the provisions of the Workmen's Compensation Act, and such award must not be based on surmise, conjecture or speculation. *Gosnell v. Bryant,* 240 S. C. 215, 125 S. E. (2d) 405. We have, likewise, held that it is the exclusive function of the Industrial Commission to settle questions of fact. The limit of the inquiry which the Circuit Court and this Court is permitted to make is whether there is any evidence reasonably tending to support the conclusions of the commission. It follows that this Court, and also the Circuit Court, may reverse an award if there is an absence of evidence to support it. *Fowler v. Abbott Motor Co.,* 236 S. C. 226, 113 S. E. (2d) 737.

A death arises in the course of employment within the meaning of the Workmen's Compensation Act when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. An accident arises out of the employment when it arises be-

cause of it as when the employment is a contributing proximate cause. These conditions must concur before the Act can apply. *Portee v. South Carolina State Hospital,* 234 S. C. 50, 106 S. E. (2d) 670.

Sunny Slope Farms is engaged in the business of producing and marketing peaches. It owns a farm on which the peaches are produced and has a packing shed located on a railroad siding near Gaffney, South Carolina, and some distance from the farm where the peaches are produced.

Fernando Sola, the deceased employee, was employed by Sunny Slope Farms as a carpenter, bookkeeper and packing shed worker and received as a salary therefor $50.00 per week. He lived in a labor camp maintained on the farm of his employer. The employee, on the day of his death, reported to the packing shed at 7:00 A. M. and worked until 6:00 P. M. and shortly after leaving the peach packing shed and while crossing the tracks of the Southern Railway, the automobile in which he was riding was struck by a train, resulting in his death. The automobile in which the deceased was riding was not furnished by his employer but belonged to one Aponte, the father-in-law of the deceased. The reason the deceased was using such automobile was because his own automobile was disabled.

The testimony shows that a labor camp was maintained on the premises of Sunny Slope Farms and that during the peach season some one hundred and fifty Puerto Ricans where housed and fed in this camp and each paid therefor the sum of $12.00 per week. Frank Trapaka, an employee of Sunny Slope Farms, operated the labor camp, and the one Charlie Aponte was the camp manager. Trapaka testified that Sola did carpenter work in the repair of ladders at the camp. In addition thereto, in the absence of Trapaka and Aponte, Sola was superior to the laborers housed in the camp and assisted in keeping order and breaking up fights among the Puerto Ricans. Trapaka explains that in connection with keeping order, that Sola just helped him

because he was a good friend. Trapaka also testified that the labor camp buildings belonged to Sunny Slope Farms but the operation of the camp was a private business. He admitted that the repair of ladders and the keeping of the payroll records at the farm was a part of the business of Sola's employer. He denied, however, that Sola had any duties to perform at the camp after he had finished his work on June 5, 1961, at the packing shed. He asserted that the payroll book work was done by Sola on Wednesday, Thursday and Friday nights of the week rather than on Monday nights this being the day on which Sola lost his life.

Charlie Aponte, the father-in-law of the deceased, testified that Sola worked as a carpenter in the daytime and then every night in the labor camp he was keeping the payroll records of the laborers. He said that Sola would work in the packing shed in the daytime as a carpenter and at suppertime he would come to the camp and, after his meal, either Trapaka or the five or six foremen would give "the times of the workers" to Sola, and such would be entered by him upon the payroll records. In addition to the $50.00 per week paid Sola for his services Aponte testified that he received "room and board free" in the camp. This witness further stated that Sola worked by the week and at any time during the day or night that Sunny Slope Farms needed him, and that he knew of times late at night when Sola was called out to work. He stated that in his absence Sola "would stay in the camp and do my duty, go buy groceries and clean the camp and everything." He further testified that Sola assisted him in taking care of the order in the camp, and this was done with the approval of Louis Caggiano, who was the secretary and treasurer of Sunny Slope Farms. Aponte described Sola's duties, with reference to the keeping of the laborers' time, by saying, "When he come to supper, he beginning to work on the time of the day books and then he pass to the big book." He further described Sola's duties as being that of a carpenter in the

daytime and then in the evening he was keeping the books. He further stated that this arrangement was made with Louis Caggiano.

Vincent Caggiano testified that he was the general manager of Sunny Slope Farms and that on the day Sola lost his life he did not give him any instructions of any kind to do any work after he left the peach shed at about 6:00 P. M. He further testified as follows:

"Q. But now Fernando Sola did not work as an agent of Frank's, he merely helped Frank out and he was on your payroll, was he not?

"A. Yes, sir.

"Q. And he was employed, not as the field workers were, by the hour, but he was employed by the week to do whatever you might demand of him, was he not?

"A. He was employed by the week.

"Q. To do whatever you might ask him to do?

"A. Yes, sir."

There is testimony that the route that Sola was using to get from the packing shed to the labor camp was the most direct one. It was further testified that no matter what route he took to go to the labor camp he would have to cross the railroad track. Louis Caggiano testified that the route that Sola took to the labor camp was not the customary way and that there was another road which by-passes the railroad track. He testified that Sola "was shown by our employees the proper procedure to come from the packing plant" to the camp.

The record reveals that the several witnesses gave conflicting testimony. However, where there is a conflict in the evidence either of different witnesses or of the same witness, the findings of fact of the commission, as triers of fact, are conclusive. *Walsh v. United States Rubber Co.,* 238 S. C. 411, 120 S. E. (2d) 685.

In the decision of the hearing commissioner, which was later affirmed by the Full Commission and the Circuit Court, he said:

"It is found as a fact that the employee, Fernando Sola, was employed as a carpenter, payroll bookkeeper and packing shed worker; that he lived at a camp furnished by his employer, subject to call at all times, with duties which made it necessary to travel back and forth between the two places in order to perform his duties; and, while in the course of his employment, going from the packing shed to the camp, he was hit by a Southern Railway train, an accident which resulted in his death on June 5th, 1961, the same day as the accident."

As a general rule, an employee going to or coming from the place where his work is to be performed is not engaged in performing any service growing out of and incidental to his employment, and, therefore, an injury sustained by accident at such time does not arise out of and in the course of his employment. However, there are certain exceptions to this rule, as follows: (1) Where, in going to and returning from work, the means of transportation is provided by the employer, or the time that is consumed is paid for or included in the wages; (2) Where the employee, on his way to or from his work, is still charged with some duty or task in connection with his employment; (3) The way used is inherently dangerous and is either (a) the exclusive way of ingress and egress to and from his work; or (b) constructed and maintained by the employer; or (4) That such injury incurred by a workman in the course of his travel to his place of work and not on the premises of his employer but in close proximity thereto is not compensable unless the place of injury was brought within the scope of employment by an express or implied requirement in the contract of employment of its use by the servant in going to and coming from his work. *Gallman v. Springs Mills,* 201 S. C. 257, 22 S. E. (2d) 715; *Eargle v. South Carolina Electric & Gas Co.,* 205 S. C. 423, 32 S. E. (2d) 240; *Bailey v. Santee River Hardwood Co.,* 205 S. C. 433, 32 S. E. (2d) 365; *Dicks v. Brooklyn Cooperage Co.,* 208 S. C. 139, 37 S. E. (2d) 286; *Mc-*

*Donald v. E. I. DuPont DeNemours & Co.,* 223 S. C. 217, 74 S. E. (2d) 918, and *Fowler v. Abbott Motor Co.,* 236 S. C. 226, 113 S. E. (2d) 737.

Ordinarily, the employment relationship is suspended from the time the employee leaves his work until he resumes his work unless the incidents of employment are exceptional. *Dicks v. Brooklyn Cooperage Co., supra.* In *Johnson v. Merchants Fertilizer Co.,* 198 S. C. 373, 17 S. E. (2d) 695, this Court held that an injury arises, "in the course of employment" within the meaning of the Workmen's Compensation Act, when it occurs within the period of employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling these duties or engaged in doing something incidental thereto.

Ordinarily, a workman is within the course of his employment while traveling from one job or working place to another during the working day, on the employer's time, so as to be entitled to compensation for an injury received while so engaged. 58 Am. Jur., Workmen's Compensation, sec. 222, page 728. There is cited in support of the foregoing text the cases of *Marley v. Orval P. Johnson & Co.,* 215 Iowa 151, 244 N. W. 833, 85 A. L. R. 969, and *Kunze v. Detroit Shade Tree Co.,* 192 Mich. 435, 158 N. W. 851, L. R. A. 1917A, 252. See also the annotation in 50 A. L. R. (2d), page 363.

In Larson on Workmen's Compensation Law, Vol. I, section 16.00, page 222, it is said:

"The rule excluding off-premises injuries during the journey to and from work does not apply if the making of that journey, whether or not separately compensated for, is in itself a substantial part of the service for which the worker is employed."

Admittedly, Sola's employment required him to perform his services at two different places, one being at the packing shed and the other at the labor

camp. Each was recognized as a part of the employment premises. Necessarily, in order to perform such services, Sola had to travel between the two places of employment. The regularity of the work at the two places and the necessary travel between such has the effect of bringing the place of injury within the scope and course of his employment by the requirement in his contract of employment that he perform his duties at two different places. In fact, the travel of Sola from the packing shed to the labor camp was contemplated by his employer because he was shown "the proper procedure to come from the packing plant" to the camp.

We conclude that there was evidence from which the Industrial Commission could conclude that Sola's injury, resulting in his death, was caused by an accident arising out of and in the course of his employment. We are bound by this finding of fact.

The exception of the appellants is overruled and the judgment below is affirmed.

Affirmed.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.