732 S.E.2d 662

LeAndra LEWIS, Appellant,

v.

L.B. DYNASTY, INC., d/b/a Boom Boom Room Studio 54 and the South Carolina Uninsured Employers' Fund, Defendants,

Of whom the South Carolina Uninsured Employers' Fund is Respondent.

Appellate Case No.2010–165646.

No. 5032.

Court of Appeals of South Carolina.

Heard March 27, 2012.

Decided Sept. 5, 2012.

Rehearing Denied Oct. 18, 2012.

130

Charles B. Burnette, III, Burnette & Payne, PA, of Rock Hill, Blake A. Hewitt and John S. Nichols, Bluestein, Nichols, Thompson, & Delgado, LLC, of Columbia, for Appellant.

Lisa C. Glover, the South Carolina Uninsured Employers' Fund, of Columbia, for Respondent.

FEW, C.J.

LeAndra Lewis worked as a dancer in various "exotic dance clubs" throughout North and South Carolina. On June 23, 2008, she was shot while dancing at the Boom Boom Room Studio 54 on Two Notch Road in Columbia, South Carolina. The workers' compensation commission held that she was not an employee of the club and therefore not entitled to benefits under the Workers' Compensation Act. We agree.

## I. Facts and Procedural History

Lewis was nineteen years old and living in Charlotte, North Carolina at the time of her injury. She danced three or four nights a week at a place called Club Nikki's in Charlotte. On two or three other nights a week, Lewis travelled around the Carolinas to dance in other clubs. She typically earned between $250.00 and $350.00 a night in cash. When the single commissioner asked about her total income dancing "five to six nights a week, fifty weeks,"[1] Lewis responded, "the money is actually addictive honestly, so you want to strive to get more, you know, so you work even harder." Lewis worked several years in this business before she was shot, and she never filed a tax return.[2] The clubs where Lewis worked are commonly referred to as strip clubs. Lewis's role as a dancer in these clubs is what most people would call being a stripper.

The night Lewis was shot was the second or third night she danced at the Boom Boom Room. She had not danced there the night before, and she could not remember the previous

---

1. Using the numbers testified to by Lewis, which average five and a half nights a week for fifty weeks earning $300.00 per night, her annual taxable income would have been $82,500.00.

2. In response to a follow-up question about filing tax returns, Lewis testified, "I don't have enough money. I want to talk to somebody, but they're just too expensive for me to afford."

time or times she was there. Lewis presented several fellow exotic dancers as witnesses to explain that dancers often choose a city and a club to dance in on a particular night and travel there uninvited and unannounced. In keeping with this practice, Lewis showed up at the Boom Boom Room on this particular night, showed her identification to prove she was at least eighteen years old, and paid the required "tip-out" fee in cash to the club. She did not fill out an employment application and did not sign an employment agreement. The club gave her a "rules sheet," she went to the dressing room to put on her outfit, and she danced.

At some point during the night, an altercation broke out in the club. There was gunfire, and a stray bullet hit Lewis in the abdomen. She suffered serious injuries to her intestines, liver, pancreas, kidney, and uterus. Surgeons removed one kidney, and doctors informed her she may never be able to have children due to the injuries to her uterus. According to her testimony, extensive scarring from the gunshot wound left her unemployable as an exotic dancer.

Lewis filed a claim for benefits with the workers' compensation commission. Because the club had no insurance, the South Carolina Uninsured Employers' Fund was forced to defend. Both the single commissioner and the appellate panel denied Lewis's claim based on the finding that she was not an employee. Her appeal came directly to this court pursuant to section 42–17–60 of the South Carolina Code (Supp.2011).

## II. The Independent Contractor/Employee Analysis

"[T]he determination of whether a claimant is an employee or independent contractor focuses on the issue of control, specifically whether the purported employer had the right to control the claimant in the performance of [her] work." *Wilkinson ex rel. Wilkinson v. Palmetto State Transp. Co.*, 382 S.C. 295, 299, 676 S.E.2d 700, 702 (2009). The test requires us to "examine[ ] four factors which serve as a means of analyzing the work relationship as a whole: (1) direct evidence of the right or exercise of control; (2) furnishing of equipment; (3) method of payment; [and] (4) right to fire." *Id.* The question is a jurisdictional one as to which the appellate court "may take its own view of the preponderance

of the facts upon which jurisdiction is dependent." *Pikaart v. A & A Taxi, Inc.*, 393 S.C. 312, 317, 713 S.E.2d 267, 270 (2011). Applying the *Wilkinson* "control" test to the facts of this case, we find that Lewis was not an employee of the club.

Lewis claims that the club's managers "controlled" her by searching her when she arrived that night, requiring her to pay the "tip-out" fee, and directing her to the manager's office and then the dressing room. She argues in her brief the club's control over her is demonstrated by these facts:

> She danced when the club told her to dance; the club selected the music; the club set her hours; the club required her to perform on demand; the club required her to strive to get V.I.P. dances; the club set her tip-out and the floor rate for V.I.P. dances; and the club required her to bring drinks from the bar.

She argues that the club furnished equipment, such as the stage for dancing; poles to assist the dancers; private rooms for V.I.P. dances; tables, chairs, and couches for the customers; and even glasses in which the bartenders poured their drinks. In her brief, Lewis states, "The club provided the dancers with cleaning solution, towels, and a basket for collecting money while on stage, and the club provided the dancers with lockers for their belongings."

Lewis discounts the method of payment factor on these facts since the club paid her nothing, but simply took a cut of her tips. As to the right to fire factor, Lewis argues the club's right to "fine" her or refuse her readmission to dance at the club for violating club rules weighs in favor of an employment relationship.

We compliment Lewis's counsel for this creative presentation, framing questions to the witnesses and presenting evidence to the commission in such a fashion as to create the appearance that the facts of this case fit the words of the *Wilkinson* test. However, we find that none of this supports the argument that Lewis met the test for an employment relationship under *Wilkinson*. Rather, the facts of this case demonstrate that Lewis was not an employee, and therefore that she is not entitled to workers' compensation benefits.

We decide this appeal using the test articulated by the supreme court in *Wilkinson*. *See Pikaart*, 393 S.C. at 318–19,

713 S.E.2d at 270–71 (explaining that *Wilkinson* requires a court to "evaluate[ ] the four factors with equal force in both directions to provide an even-handed and balanced approach"); *Paschal v. Price*, 392 S.C. 128, 133–34, 708 S.E.2d 771, 773–74 (2011) (applying *Wilkinson* test). As Lewis's counsel candidly acknowledged at oral argument, however, this case presents an "unorthodox" situation. Given these unusual facts, we initially stand back from the *Wilkinson* analysis and note that Lewis was an itinerant artistic performer. Other than to perform within the physical limitations of the Boom Boom Room and to comply with its basic rules and procedures, most of which simply required her to obey the law, she did as she pleased. One of her witnesses testified, "Sometimes you just jump up some days and say, 'let's go down here, I think.' Or a rapper might be here, you know, that's another reason that girls travel, is a rapper might be here or an actor or somebody and you just want to come down here for that." Lewis was asked at the hearing before the single commissioner, "You could go to ten different clubs in ten different days if you wanted to?" to which she responded, "Right." Lewis was never invited to dance at the Boom Boom Room. She showed up unannounced, paid the club for the right to dance and receive tips from its customers, and kept almost all the money she received without paying any employment taxes. This arrangement left her free to walk out of the club at a moment's notice without any employment-related conse-quences other than to lose income. As one of Lewis's wit-nesses testified, "You're not free to leave, but you can leave. You have to pay to leave." These circumstances and others we will discuss weigh heavily against finding an employment relationship.

Focusing back on the *Wilkinson* test, we find Lewis was not an employee.

### 1. *The right or exercise of control*

Despite all the circumstances cited by Lewis under which the club required her to work, the work she travelled from Charlotte to perform, and the performance the customers of the club paid to see, was that of an exotic dancer. As Lewis states in her brief, "The record does not indicate that the club

told [her] *how* to dance." [3]   As counsel conceded at oral argument, "There is not any evidence of the club telling [her] how specifically to dance" and, "While the dance is going on she has complete discretion."   The extent to which an exotic dancer in the Boom Boom Room decides the manner in which she performs her dance to satisfy the club's customers, according to the record in this case, is not subject to any limitation or control by the club.   The "right or exercise of control" factor weighs against finding an employment relationship.

### 2.  Furnishing of equipment

The "equipment" Lewis argues the club furnished her is insignificant to the *Wilkinson* analysis.   With respect to furnishing equipment, the club did nothing more than allow her onto its premises.   There is no practical possibility that an exotic dancer might bring her own stage, poles, chairs, couches, or bar glasses.   From the standpoint of both the Boom Boom Room and its customers, Lewis brought her own "equipment" for her work.   This factor weighs against finding an employment relationship.

### 3.  Method of payment

As Lewis points out in her brief, "The club paid Ms. Lewis nothing—zero."   She collected her payment in the form of cash tips from the club's customers.   The club's only involvement in the customers paying money to the dancers was to keep a large quantity of one dollar bills on hand so that a customer could "make it rain."   This procedure allowed a customer who was particularly happy with a dancer's performance or who wanted to encourage a more enthusiastic performance to pay the club $100.00 or more and get the same amount back in one dollar bills.   When the customer threw the ones in the air, he was said to "make it rain."   As Lewis testified, however, even in this instance the money comes from the customer.   Therefore, the club did not pay Lewis.   Rather, *she paid the club* for the right to perform.   As she

---

3.   In fairness, Lewis continued the sentence with "but the record does reflect that the club exerted so much control over [her] that *if* the club had told [her] how to dance, she would have been required to follow the club's instructions."   We find no evidentiary support for the portion of the sentence quoted in this footnote.   Rather, the record indicates the club had nothing to say as to *how* Lewis should dance.

testified, "they ... told me to pay my [$70.00] tip-out" as a condition of entering the club. She also paid the club a share of her V.I.P. fees and tipped the disk jockey and bartender. This factor weighs against finding an employment relationship.

### 4. Right to fire

Lewis argues the club had the right to fire her if she did not comply with its rules. We find, however, that the "rules" the club imposed on exotic dancers like Lewis do not indicate an employment relationship. Any business has a right to impose conditions on those to whom it pays money for work, regardless of whether the worker is an independent contractor or an employee. The business's right to terminate the relationship for a violation of its conditions does not make the worker an employee. *See Wilkinson*, 382 S.C. at 304, 676 S.E.2d at 704 (stating "a right of termination, in some form, exists in an independent contractor arrangement"). In this case, the employment "relationship" Lewis claims existed was never contemplated to last more than one night in the club. Therefore, terminating the relationship would involve nothing more than kicking her out of the club and not allowing her back in on a subsequent night. Lewis was asked by her attorney, "In your own words, explain to the commissioner how their rules and controls dictate what you have to do when you get there and if you don't do what they say, what happens." She responded:

> Well, if you don't do what they say, then you get fined. If you don't pay the fine, then you are fired. Or if—it depends on to what extreme the—what you did, you know.... Like if you get caught having sex in the club, then you're automatically fired. Like fighting, you're automatically fired, can't work back at the club.

These restrictions do not distinguish Lewis's relationship with the Boom Boom Room from any independent contractor relationship. Any business that pays for work to be performed on its premises is free to terminate the relationship for the type of conduct Lewis described, even when the work is being performed by an independent contractor. The "rules" imposed on Lewis are not in the record, and Lewis has cited no significant restriction on her conduct from these rules or otherwise that is not simply a requirement that Lewis obey

the law. *See* 382 S.C. at 302, 676 S.E.2d at 703 (stating "requiring a worker to comply with the law is not evidence of control by the putative employer"). The "right to fire" factor weighs against finding an employment relationship.

## III. Conclusion

We agree with the workers' compensation commission's finding that Lewis is not an employee. Thus, the commission correctly concluded it had no jurisdiction to award benefits. This ruling makes it unnecessary to address the other issues raised on appeal. *See Price v. Peachtree Elec. Servs., Inc.,* 396 S.C. 403, 410, 721 S.E.2d 461, 464 (Ct.App.2011) (declining to address other issues when "our determination as to the jurisdiction of the Commission is dispositive of the case").

**AFFIRMED.**

HUFF, J., concurs.

SHORT, J., dissents in a separate opinion.

SHORT, J., dissenting.

The majority finds the Appellate Panel of the South Carolina Workers' Compensation Commission (Appellate Panel) was correct in finding Lewis was an independent contractor of the Boom Boom Room Studio 54 (the Club) in Columbia. However, I would find that Lewis was an employee of the Club; therefore, I respectfully dissent.[4]

"The existence of an employment relationship is a jurisdictional issue for purposes of workers' compensation benefits

---

4. The Club did not have workers' compensation insurance; therefore, the South Carolina Uninsured Employer's Fund (the Fund) became involved in the case. The Fund filed an initial brief on appeal; however, it did not file a final brief. Rule 208(a)(4), SCACR, provides that if a respondent does not file an initial brief, this court is permitted to take whatever action the court deems proper. Respondent's failure to file a brief alone can justify reversal. *See Turner v. Santee Cement Carriers, Inc.,* 277 S.C. 91, 96, 282 S.E.2d 858, 860 (1981) (noting that respondent did not file a brief with the court and her failure to do so allowed the court to take such action upon the appeal as it deemed proper, and stating this failure alone would justify reversal; however, it simply considered it as an additional ground). Despite the Fund's failure to file a final brief, this court permitted the Fund to appear and argue the case at oral argument.

138

and is reviewable under a preponderance of the evidence standard." *Shatto v. McLeod Reg'l Med. Ctr.*, 394 S.C. 552, 557, 716 S.E.2d 446, 449 (Ct.App.2011). Because the issue of Lewis's employment status is jurisdictional, this court makes findings based on its view of the preponderance of the evidence. *See Brayboy v. WorkForce*, 383 S.C. 463, 464, 681 S.E.2d 567, 567 (2009) (making its findings based on its view of the preponderance of the evidence because the issue of Brayboy's employment status was jurisdictional).

"Under South Carolina law, the primary consideration in determining whether an employer/employee relationship exists is whether the alleged employer has the right to control the employee in the performance of the work and the manner in which it is done." *Paschal v. Price*, 392 S.C. 128, 132, 708 S.E.2d 771, 773 (2011). "The test is not the actual control exercised, but whether there exists the right and authority to control and direct the particular work or undertaking." *Kilgore Group, Inc. v. S.C. Emp't Sec. Comm'n*, 313 S.C. 65, 68, 437 S.E.2d 48, 49 (1993). " 'An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work.' " *Bates v. Legette*, 239 S.C. 25, 34–35, 121 S.E.2d 289, 293 (1961) (quoting 56 C.J.S. *Master and Servant* § 3(1)). "The four principal factors indicating the right of control are (1) direct evidence of the right to, or exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire." *Paschal*, 392 S.C. at 132, 708 S.E.2d at 773. This court evaluates the four factors with equal force in both directions. *Wilkinson v. Palmetto State Transp. Co.*, 382 S.C. 295, 300, 676 S.E.2d 700, 702 (2009).

Although I could not find any South Carolina appellate court cases that have addressed whether an exotic dancer is classified as an employee or independent contractor, other courts in various jurisdictions have analyzed the same or similar arrangements between exotic dancers and clubs and found an employment relationship existed. *See Club Paradise, Inc. v. Oklahoma Emp't Sec. Comm'n*, 213 P.3d 1157, 1161 (Okla.Civ.App.2008) (finding the exotic dancers were employees of Club Paradise based on the club's control over its dancers' performance, and noting the workers performed

on the club's premises, the club could dismiss its workers at any time, and either party could terminate their relationship without liability); *Yard Bird, Inc. v. Va. Emp't Comm'n,* 28 Va.App. 215, 224–25, 503 S.E.2d 246 (1998) (finding exotic dancers were employees based on the amount of control the Yard Bird had over its dancers, and noting the club attempted to enforce its rule that dancers not leave the premises between sets, dancers could choose times they worked, but only in conformity with the club's schedule, and the club required dancers to comply with liquor control laws and regulations that governed its licensing status). While these jurisdictions do not apply an identical test to that utilized by the courts in South Carolina for determining whether an employment relationship exists, they are to some degree similar and consider the degree of control the alleged employer exerts over the worker.

In the case before us, Lewis presented evidence that the Club exercised the right to control her and the other exotic dancers in the performance of their work. When hired, Lewis was required to present her identification and sign a form agreeing to comply with the Club's rules. The Club provided virtually all of the necessary tools for the dancers to perform, including towels, lockers, alcohol, music, chairs, tables, a stage, poles, a "V.I.P." area, and customers. Although dancers could choose their own costumes, they could not remove the bottom portion of their costume or choose when they performed on stage. The Club set the fees for V.I.P. dances and required the dancers to remit a portion of the fees they collected to the Club. The Club fined or fired dancers if they missed their turn in the rotation or altered the V.I.P. dance price. Once the dancers reported to work, the Club fined or fired them if they left before a certain time. In addition, the Club fined or fired dancers for failure to comply with the Club's rules. Thus, under the totality of the circumstances, I find the Club exercised the sufficient amount of control over Lewis in the performance of her work to establish an employment relationship, and the Appellate Panel erred in finding Lewis was an independent contractor.