# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

LeAndra Lewis, Petitioner,

v.

L.B. Dynasty, d/b/a Boom Boom Room Studio 54 and
S.C. Uninsured Employers' Fund, Defendants,

Of Whom S.C. Uninsured Employers' Fund is,
Respondent.

Appellate Case No. 2012-213376

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from The Workers' Compensation Commission

---

Opinion No. 27509
Heard January 14, 2015 – Filed March 18, 2015

---

## REVERSED AND REMANDED

---

Charles B. Burnette, III, of Burnette & Payne, PA, of
Rock Hill; John S. Nichols and Blake A. Hewitt, both of
Bluestein, Nichols, Thompson & Delgado, LLC, of
Columbia, for Petitioner.

Lisa C. Glover, of Columbia, for Respondent.

---

**JUSTICE HEARN:** LeAndra Lewis was injured by an errant bullet at
Studio 54 Boom Boom Room (the Club) while she was working as an exotic
dancer. The question before the Court is whether she is an employee of the Club
and thus eligible for workers' compensation. Considering the relationship in toto,
we find the Club exercised control over the manner in which she performed her
work and therefore conclude she was an employee.

## FACTUAL/PROCEDURAL BACKGROUND

Lewis worked as an exotic dancer, performing five to seven days a week. Lewis traveled throughout North and South Carolina to dance at different establishments, and performed at the Club on three separate occasions. Upon arrival at the Club, Lewis presented identification demonstrating she was old enough to perform, reviewed the Club's rule sheet, and paid a tip-out fee. The tip-out fee, which was determined based on when her shift started, was $70.

The types of dances Lewis performed at the Club included V.I.P. dances, table dances, and dances on the stage. Lewis was required to perform V.I.P. dances whenever a patron requested one. The Club set the minimum price of these dances, which were to be performed in a specific area, and Lewis had to give a portion of that payment to the Club. Lewis's rotation on stage was determined by the Club and it chose the music for those performances.

The Club required the performers to follow specific guidelines or risk being fined or immediately discharged. Because this Club was topless only, the dancers were subject to fines for removing their panties. Although the Club did not set times when the dancers were required to work, it did devise a dancing schedule once the women arrived and they were not allowed to leave prior to the end of their shift without paying a fine. Furthermore, if a dancer did not perform on stage during the assigned time, she had to pay a fine. Failure to pay any fine or repeated violations of the rules could result in termination. Additionally, the dancers could be dismissed for fighting or having sex in the Club.

During Lewis's shift at the Club, a fight broke out and Lewis was struck in the abdomen by a stray bullet, which caused severe damage to her internal organs and resulted in the loss of a kidney. She also sustained substantial scarring. Lewis filed a claim for workers' compensation requesting temporary total disability benefits and medical treatment from the date of the accident. The putative employer was not represented at the hearing, but the South Carolina Uninsured Employer's Fund appeared to dispute Lewis's claim, arguing Lewis was an independent contractor and not an employee.

At the hearing, Lewis argued the Club exercised control over the manner in which her work was performed, and she was therefore an employee of the Club. She testified she earned $357 the night she was shot, and made a total of $1,357 at

the Club over the course of her shifts.  Lewis did not state what her income was at the other establishments where she danced, but stated she made approximately $250 to $350 a night.  She had never filed a tax return and produced no documentation indicating where she worked or what her total income was.

The single commissioner found that Lewis was an independent contractor and denied compensation.  Additionally, the commissioner stated that had Lewis established she was an employee, her compensation rate would be $75 per week based on Lewis's failure to produce evidence of the income she earned at other establishments.  The appellate panel of the Workers' Compensation Commission affirmed, adopting the single commissioner's order.

On appeal, the court of appeals affirmed in a split decision.  *Lewis v. L.B. Dynasty, Inc.*, 400 S.C. 129, 732 S.E.2d 662 (Ct. App. 2012).  The majority found that Lewis was an independent contractor, and thus the court did not have to reach the question of whether the commissioner erred in setting her compensation rate at $75 per week.  *Id.* at 137, 732 S.E.2d at 666.  Judge Short dissented, concluding that examining the relationship as a whole, the Club exercised sufficient control to evince an employment relationship.  *Id.* at 139, 732 S.E.2d at 667 (Short, J., dissenting).  We granted certiorari.

## ISSUE PRESENTED

Did the court of appeals err in finding Lewis was an independent contractor, not an employee of the Club?

## LAW/ANALYSIS

Lewis argues the details of her professional relationship preponderate in favor of finding she was an employee of the Club and the court of appeals erred in concluding otherwise.  We agree.

We construe workers' compensation law liberally in favor of coverage to further the beneficent purpose of the Workers' Compensation Act; accordingly, only exceptions and restrictions to coverage are strictly construed.  *James v. Anne's Inc.*, 390 S.C. 188, 198, 701 S.E.2d 730, 735 (2010).  The burden of proving the relationship of employer and employee is upon the claimant, and this proof must be made by the greater weight of the evidence.  *Marlow v. E. L. Jones & Son, Inc.*, 248 S.C. 568, 570, 151 S.E.2d 747, 748 (1966).  Whether a claimant is an employee or independent contractor is a jurisdictional question and therefore the

Court may take its own view of the preponderance of the evidence. *Wilkinson ex rel. Wilkinson v. Palmetto State Transp. Co.*, 382 S.C. 295, 299, 676 S.E.2d 700, 702 (2009). The crux of this determination is the purported employer's right to control the claimant in the performance of his work. *Id.* In analyzing the nature of a work relationship the Court examines four factors: (1) direct evidence of the right or exercise of control; (2) furnishing of equipment; (3) method of payment; (4) right to fire. *Shatto v. McLeod Reg'l Med. Ctr.*, 406 S.C. 470, 475–76, 753 S.E.2d 416, 419 (2013). Each factor is considered with equal force and the mere presence of one factor indicating an employment relationship is not dispositive of the inquiry. *Id.*

At the outset, we agree with Lewis that the majority of the court of appeals allowed its analysis to be influenced by the initial conclusion that Lewis was an "itinerant artistic performer." *Lewis*, 400 S.C. at 134, 732 S.E.2d at 664. While we recognize the unique details of the arrangement between the Club and Lewis, we emphasize our inquiry is a balance of factors based on the totality of the circumstances. Attempting to broadly characterize the nature of her profession prior to engagement in the analysis foretells a single result. The question before the Court is a simple, fact-based consideration—did the Club exercise sufficient control over Lewis to create an employee relationship—further commentary on the nature of her profession is unnecessary. We therefore now proceed to the right to control test.

## I.    RIGHT TO OR EXERCISE OF CONTROL

Turning to the first prong of the test, we find the facts preponderate in favor of an employment relationship. In considering this question, the court of appeals focused on whether the Club dictated *how* she danced and concluded that because Lewis could choreograph her own routine, the Club did not control her work. We find this a myopic view in light of the facts presented. Certainly, the Club did not specify all the details of her movements, but it is unfaithful to the record to claim it did not control her performance in her capacity as an entertainer. Prior to working her shift, Lewis was required to pay a tip-out fee, undergo a search, and review the Club's rule sheet. The Club could decline her entry if her appearance was undesirable. Once Lewis began her shift, the Club chose the music for all her performances. It also dictated when in the rotation of dancers she must appear on stage. The Club set the minimum for a V.I.P. dance—which she was required to perform if asked—and specified an area for those to take place. Although Lewis technically performed routines of her own direction, the Club specified her degree

of nudity—she was required to be topless, but would be fined for removing more. Additionally, she was not permitted to leave her shift early without paying a fine.

We recognize that Lewis had no set schedule, and came when she chose with no other repercussion than the loss of income. Nevertheless, once the Club engaged her for the evening, it exercised significant control over the performance of her work. Accordingly, we find this factor weighs in favor of a finding of an employment relationship.

## II. FURNISHING OF EQUIPMENT

We further agree with Lewis that the Club furnished equipment so as to preponderate this factor in favor of her having an employee relationship.

When considering this prong, the court of appeals concluded the Club did "nothing more than allow [Lewis] on the premises" because there was no practical way she could have supplied the poles, stage, furniture, or bar items. Instead, it stated, "From the standpoint of both the [Club] and its customers, Lewis brought her own 'equipment' for her work." *Lewis*, 400 S.C. at 135, 732 S.E.2d at 665.

Initially, we disagree with the court of appeals that an individual's body can be considered equipment for the purpose of this analysis. *See Matter of Hanson*, 754 P.2d 444, 447 (Idaho 1988) ("The worker's body is not a major item of equipment within the meaning of the third element of the 'right to control' test. Major items of equipment include such things as tools, machinery, special clothing, parts, and other similar items necessary for the worker to accomplish the task to be performed. For example, a plumber, hired to perform plumbing repairs on a building, usually brings the tools, the parts, and often special equipment in the form of augers, pipe cutters and threaders, etc., in order to perform the service. Those are the sorts of items which constitute the 'major items of equipment' under the third element of the right to control test. The fact that the plumber also supplies the body doing the work is true whether he is acting as an employee or as an independent contractor.").

Furthermore, assuming her body is equipment is inconsistent with the rationale underlying the Court's consideration of this factor. As Professor Larson has written:

When it is the employer who furnishes the equipment, the inference of

the right to control is a matter of common sense and business. The owner of a $100,000 truck who entrusts it to a driver is naturally going to dictate details such as speed, maintenance, and the like in order to protect his or her investment . . . .

This being the rationale, the rule should not be applied to items of equipment whose size and value are not so large as to provide this incentive for control and for efficient employment of capital.

3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 61.01 (2013). The genesis of this consideration is that whomever bears the risk of the capital in any investment would logically exert the most control over how that investment is used.

We observe that other than her costume, Lewis brought no other equipment to the Club. The Club, however, supplied her necessary performance space—including an area for V.I.P. dances, a stage with a pole, tables, and a sound system. It therefore had a more significant interest in ensuring the dancers effectively utilized the equipment provided to ensure the advertised experience was available to the patrons. *See Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951, 959 (Nev. 2014) ("With regard to the relative investment of the parties, we note that Sapphire provides all the risk capital, funds advertising, and covers facility expenses. The performers' financial contributions are limited to . . . their costume and appearance-related expenses and house fees. Thus, the performers are far more closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments." (internal quotation omitted)). Because the Club, and not Lewis, bore the risk of the capital investment in the equipment used by Lewis to perform her work, we find this factor weighs in favor of an employee relationship.

## III.   METHOD OF PAYMENT

Lewis argues this prong of the analysis provides little assistance in analyzing the nature of her professional relationship. We recognize at the outset the facts of this case are distinct in that the Club did not directly pay her any of her earnings; instead, it facilitated the payment she received from the customers. Nevertheless, we do not agree this factor is irrelevant to our inquiry.

When considering this prong, typically a court looks to whether the claimant

was paid by the job or by the hour and how the claimant filed her taxes. Here, Lewis never filed her taxes and does not appear to have ever been given a Form 1099 or a W-2. We therefore again find it helpful to turn to Professor Larson's discussion of the rationale underlying this consideration:

> A moment's reflection will show the realistic connection between payment and control. If an employer in a regular business or industry purchases personal labor by the hour, day, or week, it is almost certain to insist on the right to see that the time is well and efficiently spent. It if pays by the hour, the employer wants to see that it gets a full hours work, and that the hour is applied where it is most needed. . . .
>
> By contrast, if the employer makes an agreement to pay a man one hundred dollars to clean out a well, it has no reason to care whether the worker is slow or fast, clumsy or efficient.

3 *Larson's*, § 61.06. Accordingly, the payment prong reflects the putative employer's interest in a worker's productivity and efficiency and whether it would indicate the retention of control over the manner in which the job is performed.

We note the Club exerted some control over her payment; it set the price of the tip-out fee and the minimum for V.I.P. dances, providing Lewis no discretion to alter these amounts. Additionally, it required Lewis to perform these V.I.P. dances upon request from a customer. Nevertheless, on the balance we agree with the court of appeals' conclusion that this factor does not does not suggest the exercise of control of the Club; therefore, we find this factor preponderates in favor of an independent contractor relationship.

## IV.   RIGHT TO FIRE

In considering the right to fire, we are aware that in any relationship there exists some right to terminate the arrangement. However, as this Court has previously noted, "[t]he power to fire, it is often said, is the power to control. The absolute right to terminate the relationship without liability is not consistent with the concept of independent contract, under which the contractor should have the legal right to complete the project." *Shatto*, 406 S.C. at 481, 753 S.E.2d at 422 (quoting 3 *Larson's* § 61.08[1]). In essence, examining this factor requires the Court to look to whether liability exists if the work is prematurely interrupted. We find the Club ultimately had the right to terminate Lewis without risk of repercussions. Accordingly, we find this factor weighs in favor of an employment

relationship.

The testimony at the hearing indicates Lewis would be fined for a failure to comply with the rules—including not staying for her rotation in stage performances, leaving before her shift was over, and declining to perform a V.I.P. dance.  Failure to pay any fine would result in her termination.  She could also be fired for continuously breaking the rules, fighting, or improper hygiene.  The Club could even decline to let her in for not having the desired appearance.  We acknowledge she had the right not to show up at all because she had no set schedule, but once she was hired for the night, the Club could end that relationship prior to her shift ending and leave Lewis with no recourse for that firing.

On balance, we find this prong indicates an employee relationship.  Lewis could be terminated for violations of the company rules and could be prevented from working at the Club's discretion.  Additionally, there is no indication Lewis would possess any right to relief if she was terminated.

## CONCLUSION

We emphasize our analysis is necessarily driven by the particular facts of this case.  Examining the totality of the circumstances, we hold the weight of the evidence weighs in favor of finding Lewis was an employee of the Club and is entitled to workers' compensation benefits.  We therefore reverse the court of appeals' opinion holding the contrary.  Additionally, because it declined to address the question of Lewis's compensation rate, we remand that issue to the court of appeals for consideration.

**TOAL, C.J., BEATTY and KITTREDGE JJ., concur.  PLEICONES, J., dissenting in a separate opinion.**

**JUSTICE PLEICONES:**  I respectfully dissent as I agree with the analysis and holding of the Court of Appeals and thus, would dismiss the writ of certiorari as improvidently granted.