**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Ryan Cook, Employee, Appellant,

v.

Condustrial, Inc., Employer and Benchmark Insurance Company, Carrier, Respondents.

Appellate Case No. 2020-001236

―――――――――

Appeal From The Workers' Compensation Commission

―――――――――

Unpublished Opinion No. 2025-UP-313
Heard June 7, 2023 – Filed September 10, 2025

―――――――――

**REVERSED AND REMANDED**

―――――――――

Malcolm M. Crosland, Jr. and J. Kevin Holmes, both of The Steinburg Law Firm, LLP, of Charleston, for Appellant.

George D. Gallagher, of Speed, Seta, Martin, Trivett & Stubley, LLC, of Columbia, for Respondents.

―――――――――

**MCDONALD, J.:** Ryan Cook appeals an order from the Appellate Panel of the Workers' Compensation Commission reversing the single commissioner's award and denying his claim. Cook argues the Appellate Panel erred in failing to liberally construe the Workers' Compensation Act (the Act) in favor of coverage;

declining to find Cook was a statutory employee; failing to find Cook's admitted accident arose out of and in the course of his employment under the premises rule; and incorrectly analyzing the "going and coming" rule. We reverse the order of the Appellate Panel, reinstate the order of the single commissioner, and remand for proceedings consistent with this opinion.

Cook was employed as an industrial painter by Condustrial, Inc., a specialized staffing company providing skilled labor to a variety of South Carolina clients.[1] Condustrial assigned Cook to work for Phillips Industrial (Phillips), which had a contract for work at the British Petroleum (BP) plant located on several hundred acres in Berkeley County.[2] The BP plant processes paraxylene, a liquid byproduct from the refining of gasoline, for plastic and textile uses.

Cook testified that at the end of each work day at the plant, he cleaned his equipment and stored it in a trailer. His supervisor, Bogar Anderson, then drove him to the security gate where Cook would sign out and return his security pass before Anderson drove them to the designated subcontractor parking lot on the property. Cook would exit this parking lot, as instructed, onto Amoco Road, turn onto Flag Creek Road, and follow Flag Creek Road before exiting the plant complex onto Cainhoy Road.[3]

On the day of his accident, Cook applied a protective coating to a newly constructed cement service ramp used by trucks delivering hydrobromic acid, a corrosive raw material used in the plant's manufacturing process.[4] Cook then followed his normal routine in finishing the day's work and leaving the property. While heading home, Cook lost control of his vehicle on Flag Creek Road and flipped over into a ditch approximately one mile from the subcontractor parking lot. EMS transported Cook to the Medical University of South Carolina (MUSC),

---

[1] The parties agreed "that Condustrial, Inc., is the proper Employer and that Benchmark Insurance Company is the proper Carrier for Condustrial."

[2] The plant is accessible from Cainhoy Road (State Highway S-8-98) by two private roads crossing the property—Amoco Drive and Flag Creek Road.

[3] Amoco, BP's predecessor at the plant, constructed both Amoco Road and Flag Creek Road in 1978. Neither road serves any public transportation purpose other than ingress to and egress from the plant.

[4] BP's corporate designee explained the protective coating was applied to prevent a spill of hydrobromic acid from eating up the cement ramp; she further agreed that protecting infrastructure was an integral part of the plant's manufacturing process.

where he underwent fusion surgery and fixation of his fifth, sixth, seventh, and eighth vertebrae. MUSC also treated fractures in Cook's left hand and pelvis.

Cook filed a Form 50, alleging injuries to multiple body parts. Condustrial and Benchmark Insurance Company (collectively, Respondents) filed a Form 51 denying the accident arose out of and in the course of Cook's employment.

Following a hearing, the single commissioner found Cook's claim compensable, awarding temporary total disability benefits and additional medical treatment. Respondents filed a Form 30, requesting review. The parties next appeared before the Appellate Panel, which reversed the single commissioner and denied Cook's claim. The Appellate Panel found the "premises rule" was inapplicable because Condustrial did not own, maintain, or control the road where the accident occurred; Cook was not a statutory employee for purposes of imputing liability to Condustrial because the work Cook performed was not part of BP's essential business functions; and no exception to the "going and coming" rule applied.

Respondents do not dispute the relevant facts of the case; thus, whether Cook's injuries are compensable involves questions of law. *See Davaut v. Univ. of S.C.*, 418 S.C. 627, 632, 795 S.E.2d 678, 681 (2016) ("Because the facts are not in dispute, we are free to decide this case as a matter of law."); *Grant v. Grant Textiles*, 372 S.C. 196, 201, 641 S.E.2d 869, 872 (2007) ("Where there are no disputed facts, the question of whether an accident is compensable is a question of law."). The Act is to be liberally construed in favor of coverage, while restrictions and exceptions are to be strictly construed. *See Peay v. U.S. Silica Co.*, 313 S.C. 91, 94, 437 S.E.2d 64, 65 (1993) (explaining that because "workers' compensation statutes are construed liberally in favor of coverage . . . [, it] follows that any exception to workers' compensation coverage must be narrowly construed").

1. Cook argues the Appellate Panel erred in reversing the single commissioner's ruling that he was Condustrial's statutory employee for purposes of the Act. While we agree Cook was not BP's statutory employee, we find the evidence established he was Condustrial's employee. Condustrial, a labor contractor, placed Cook as an industrial painter at Phillips, which then used him pursuant to its contract with BP to provide work essential to BP's manufacturing process.

"Coverage under the Act is generally dependent on the existence of an employer-employee relationship." *Edens v. Bellini*, 359 S.C. 433, 442, 597 S.E.2d 863, 868 (Ct. App. 2004). There are exceptions to this general rule, one of which is found at section 42-1-400 of the South Carolina Code (2015), which details an

owner's obligation to provide workers' compensation coverage for the workmen of his subcontractor:

> When any person, in this section and Sections 42-1-420 and 42-1-430 referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and Sections 42-1-420 to 42-1-450 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this title which he would have been liable to pay if the workman had been immediately employed by him.

"Any doubts as to a worker's status should be resolved in favor of including him or her under the Workers' Compensation Act." *Edens*, 359 S.C. at 443, 597 S.E.2d at 868.

Here, there is evidence in the record that an essential function of the BP plant is to process paraxylene, a liquid byproduct from the refining of gasoline, into powder form for multiple uses including textiles and plastics. Although BP employs resident contractors to perform general maintenance at the plant, BP uses outside contractors when the resident contractors "can't handle something." BP subcontracted Phillips, to which Condustrial had assigned Cook, to apply a protective coating onto its new cement service ramp used by trucks when unloading the hydrobromic acid used in BP's processes. Because this was a new ramp, application of this protective coating was not merely routine maintenance. Still, Phillips's application of the protective coating to the cement service ramp in the instant case is not a part of BP's core business of reprocessing paraxylene.

Even so, we find Cook's injuries on BP's private road as Cook was going home from work are compensable against—or otherwise imputed to—Condustrial. South Carolina case law supports this finding. For example, in *Kilgore Group, Inc. v. South Carolina Employment Security Commission*, 313 S.C. 65, 437 S.E.2d 48 (1993), our supreme court held substantial evidence supported the finding that temporary workers sent to The State Newspaper and State Printing Company were employees of Kilgore Group, Inc., the business supplying the temporary workers. Although the clients controlled the daily activities of the workers, Kilgore provided

their workers' compensation coverage.  The court agreed with the South Carolina Employment Security Commission that Kilgore's contract language declaring the relationship with the worker to be that of an independent contractor was not dispositive.  *Id.* at 68-69, 437 S.E.2d at 49-50.

In reaching this decision, the supreme court noted "the only specific evidence of any actual relationship was that of the workers sent to *The State* and State Printing Company."  *Id*. at 69, 437 S.E.2d at 50 (citing *Ellison, Inc. v. Bd. of Rev. of the Indus. Comm'n of Utah, Dep't of Emp. Sec.*, 749 P.2d 1280, 1285 (Utah Ct. App. 1987) (holding employer had burden of producing other employees it maintained operated under a different relationship than the employee who testified before the Industrial Commission)).  The court then explained:

> The testimony of these clients indicates the workers' performance and the manner in which it was done were controlled directly by *The State* and State Printing Company supervisors.  However, *The State* and State Printing Company had no contract with the workers.  Their ability to exercise control over the workers' activities was derived solely from their contracts with Kilgore and Kilgore's contract with the workers.  Therefore, it can be inferred Kilgore possessed the right to control the workers' performance and the manner in which it was done and delegated that authority to its clients.

*Id*.

More recently, in *Turner v. Medustrial Healthcare Staffing Service and Condustrial, Inc.*, Op. No. 2024-UP-110, at *2 (S.C. Ct. App. filed July 3, 2024), *cert. denied*, (Dec. 10, 2024), this court rejected Condustrial's argument that a contract nurse placed at the South Carolina Department of Corrections pursuant to SCDC's staffing agreement with Condustrial was an independent contractor rather than Condustrial's employee.  As in *Kilgore*, Turner's execution of Condustrial's "Independent Contractor Agreement" was not dispositive of the nature of the employment relationship.  *Id*.  Nor was a finding by the Department of Employment and Workforce that such nurses were independent contractors.  *Id*.  Instead, applying the four-factor test of *Shatto v. McLeod Regional Medical Center*, 406 S.C. 470, 753 S.E.2d. 416 (2013), this court found Turner was Condustrial's employee.  *See Turner*, at *2 ("[T]he determination of whether a claimant is an employee or independent contractor focuses on the issue of control,

specifically whether the purported employer had the *right* to control the claimant in the performance of his work." (quoting *Shatto*, 406 S.C. at 475, 753 S.E.2d at 419)); *Shatto*, 406 S.C. at 475-76, 753 S.E.2d at 419 (explaining that in analyzing the work relationship as a whole, the appellate court examines four factors: "(1) direct evidence of the right or exercise of control; (2) furnishing of equipment; (3) method of payment; (4) right to fire" (quoting *Wilkinson ex rel. Wilkinson v. Palmetto State Transp. Co.*, 382 S.C. 295, 299, 676 S.E.2d 700, 702 (2009))); *Lewis v. L.B. Dynasty*, 411 S.C. 637, 641, 770 S.E.2d 393, 395 (2015) ("Whether a claimant is an employee or independent contractor is a jurisdictional question and therefore the [appellate c]ourt may take its own view of the preponderance of the evidence."); *Sellers v. Tech Serv., Inc.*, 421 S.C. 30, 37, 803 S.E.2d 731, 735 (Ct. App. 2017) ("South Carolina's policy is to resolve jurisdictional doubts in favor of the inclusion of employers and employees under the Workers' Compensation Act." (quoting *Spivey v. D.G. Constr. Co.*, 321 S.C. 19, 21-22, 467 S.E.2d 117, 119 (Ct. App. 1996))); *Lewis*, 411 S.C. at 641, 770 S.E.2d at 395 ("The burden of proving the relationship of employer and employee is upon the claimant, and this proof must be made by the greater weight of the evidence."); *id.* at 642, 770 S.E.2d at 395 ("Each factor is considered with equal force and the mere presence of one factor indicating an employment relationship is not dispositive of the inquiry.").

In *Turner*, Condustrial had the right to direct the nurses it provided to SCDC, SCDC provided the nurses the equipment they used, and Condustrial covered the nurses' insurance. *Turner*, at *3. "Condustrial's method of paying Turner an hourly rate indicate[d] an employment relationship." *Id*. "Finally, the right to fire factor also weigh[ed] in favor of an employment relationship because many of the forms Condustrial required Turner to complete provided Condustrial had the right to fire her." *Id*.

We do not have the benefit of Cook's Condustrial contracts, but the single commissioner aptly summarized the evidence of Cook's employment:

> The Claimant was employed by Condustrial, Inc., a labor contractor company, as an industrial painter. Condustrial assigned the Claimant to work for Phillips Industrial which contracted to perform work at the British Petroleum (BP) Plant in Cainhoy, South Carolina. Claimant testified he worked from 7:00 AM to 5:00 PM and was paid $16.00 per hour. (Citations omitted). This is consistent with the Defendant's WCC Form 12-A which indicates the Claimant was paid six hundred forty

dollars per week in wages. The Defendants produced no evidence to rebut the Claimant's testimony.

Cook testified that in his job with Condustrial, he "was hired to go to different locations and paint, sandblast, pressure wash, whatever they needed me to do at the time." Cook's supervisor on the BP job testified that when they first started the job, "we tell him everything" including "which way to come in to the plant and which way to leave." With respect to the equipment provided, Cook explained industrial painting involves "a lot more than a paintbrush." There is specific equipment for sandblasting and hydroblasting, and some of this equipment can weigh as much as seventy-five pounds. At the end of each work day, Cook cleaned and stored the equipment, was driven by his supervisor to the security gate to sign out and return his premises pass, and was then driven to the subcontractor parking lot to pick up his car. As in *Turner*, we find Cook was Condustrial's employee for purposes of his assigned work at the BP plant.

2. Cook next argues the Commission erroneously found his accident did not arise out of and in the course of his employment under the premises rule. In the alternative, Cook asserts this court should find his accident compensable under the fourth exception to the going and coming rule. We agree the Commission misapplied both the premises and going and coming rules in reversing the single commissioner's award.

Our supreme court examined the going and coming rule as well as its exceptions in *Davaut*. 418 S.C. at 633, 795 S.E.2d at 681. There, a university professor was struck by a vehicle and injured while crossing a city street to reach her car in a lot owned by the university. *Id.* at 630, 795 S.E.2d at 679-80. Relying on *Howell v. Pacific Columbia Mills*, 291 S.C. 469, 354 S.E.2d 384 (1987),[5] the single commissioner found the employee's injuries were not compensable. *Davaut*, 418 S.C. at 631, 795 S.E.2d at 680. Both the commission and this court upheld the single commissioner's denial of coverage. *Id.*

In reversing these decisions, our supreme court explained:

---

[5] In *Howell*, the supreme court held a millworker struck while crossing a public street connecting an employer-maintained parking lot and one of the mill's main entrances suffered no compensable injury because she was dropped off in front of the mill, exited directly onto the public street, and never entered the employer's parking lot before she was injured. *Id.* at 471-74, 354 S.E.2d at 385-86.

"Workers' compensation pays an employee benefits for damages resulting from personal injury or death by accident arising out of and in the course of the employment." *Bentley v. Spartanburg County*, 398 S.C. 418, 422, 730 S.E.2d 296, 298 (2012). "'Arising out of' refers to the origin of the cause of the accident; 'in the course of' refers to the time, place, and circumstances under which the accident occurred." *Baggott v. S. Music, Inc.*, 330 S.C. 1, 5, 496 S.E.2d 852, 854 (1998). "An injury occurs in the course of employment 'when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties and while fulfilling those duties or engaged in something incidental thereto.'" *Id.* (quoting *Beam v. State Workmen's Comp. Fund*, 261 S.C. 327, 331, 200 S.E.2d 83, 85 (1973)). "In determining whether a work-related injury is compensable, the Workers' Compensation Act is liberally construed toward providing coverage and any reasonable doubt as to the construction of the Act will be resolved in favor of coverage." *Whigham v. Jackson Dawson Commc'ns*, 410 S.C. 131, 135, 763 S.E.2d 420, 422 (2014).

418 S.C. at 633, 795 S.E.2d at 681 (other internal citations omitted).

Reiterating that "employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done[,]" the supreme court stated an injury is one arising out of and in the court of the employment if an employee is "injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises." *Id.* (quoting *Williams v. S.C. State Hosp.*, 245 S.C. 377, 381, 140 S.E.2d 601, 603 (1965); *see also Holston v. Allied Corp.*, 300 S.C. 174, 177, 386 S.E.2d 793, 795 (Ct. App. 1989) (holding employee's act of exiting employer's premises by car "was a reasonable incident to her leaving the place of her work and the injury therefore resulted from a risk reasonably incident to her employment and 'arose out of' the employment").

"[T]he general rule in South Carolina is that an injury sustained by an employee away from the employer's premises while on his way to or from work does not arise out of and in the course of employment.'" *Davaut*, 418 S.C. at 634, 795 S.E.2d at 682 (quoting *Howell*, 291 S.C. at 471, 354 S.E.2d at 385). But we recognize multiple exceptions to this general rule:

> (1) Where, in going to and returning from work, the means of transportation is provided by the employer, or the time that is consumed is paid for or included in the wages; (2) Where the employee, on his way to or from his work, is still charged with some duty or task in connection with his employment; (3) The way used is inherently dangerous and is either (a) the exclusive way of ingress and egress to and from his work; or (b) constructed and maintained by the employer; or (4) That such injury incurred by a workman in the course of his travel to his place of work and not on the premises of his employer but in close proximity thereto is not compensable unless the place of injury was brought within the scope of employment by an express or implied requirement in the contract of employment of its use by the servant in going to and coming from his work.

*Sola v. Sunny Slope Farms*, 244 S.C. 6, 14, 135 S.E.2d 321, 326 (1964).

While Respondents concede the premises rule is applicable to an employer-owned road, they contend the premises rule is inapplicable here because Flag Creek Road is owned by BP, not Condustrial. *But see Williams*, 245 S.C. at 381-82, 140 S.E.2d at 603 ("It is true that an accidental injury is not rendered compensable by the mere fact that it occurred on the employer's premises; but the fact that the claimant was rightfully upon the premises controlled by the employer, as a result of her employment, and was leaving over the employer's premises as contemplated at the close of the day's work, made the act of leaving 'in the course of' her employment."). Thus, it is appropriate to consider whether Cook's injury occurred "while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises." *Davaut*, 418 S.C. at 633, 795 S.E.2d at 681 (quoting *Williams*, 245 S.C. at 381, 140 S.E.2d at 603); *see also Evans v. Coats & Clark*, 328 S.C. 467, 468-69, 492 S.E.2d 807, 807-08 (Ct. App. 1997) (finding employee was entitled to workers'

compensation benefits where she was injured in the lobby of the building where her employer leased office space even though the lobby was a common area not owned or controlled by the employer, reasoning that the lobby was effectively part of the employer's premises because it was an area over which the employer had a right of passage and it was along a route commonly used by employees to access and exit the work premises).

Our review of the record reveals the BP plant is not "in practical effect" a part of Condustrial's premises. In fact, Cook properly noted before the Appellate Panel that "Condustrial owns no work sites. It owns no building other than its administrative building where it processes information for its workers that they then send out to jobs around South Carolina in various industrial setting[s]." Still, Cook argues his accident is compensable under the fourth exception to the going and coming rule because "the place of injury was brought within the scope of employment by an express or implied requirement in the contract of employment." *Sola*, 244 S.C. at 14, 135 S.E.2d at 326; *see also Eargle v. S.C. Elec. & Gas Co.*, 205 S.C. 423, 32 S.E.2d 240, 243-44 (1944) (finding under "the peculiar and unusual facts of this case," a maintenance worker instructed to report to work on Christmas morning to address an emergency at a gas company plant on the North shore of the Broad River was covered under the Act via an express or implied requirement of his employment contract when he drowned while attempting to boat to the plant from the South shore in dense fog enshrouding the lake and the river). We agree.

Cook testified he was instructed to take Flag Creek Road when leaving the BP plant in the direction of I-526. Anderson's testimony confirmed these instructions. On cross-examination, both Cook and Anderson acknowledged they could take either Flag Creek Road or Amoco Road, the two available roads on the BP plant complex, depending on the direction they were heading after leaving the plant. Cook used Flag Creek Road because it was the fastest and most direct way home, and he was still on BP's premises when he was injured. Because Condustrial has no work site for the industrial employees it places, the only premises at issue here is the BP plant where Phillips—as Condustrial's client—placed Cook. *See, e.g., Hayes v. Gibson Hart Co.*, 789 S.W.2d 775, 779 (Ky. 1990) (finding employee's injury, which occurred while coming to work after entering private owner's premises, was a work-related injury for which contractor's employee could recover workers' compensation benefits because "employee's work assignment placed him where he was exposed to the injury for which he [sought] compensation and he could not have been there otherwise"); *Burke v. Wilfong*, 638 N.E.2d 865, 869 (Ind. Ct. App. 1994) (holding that because accident which caused contractor's

employee's injury occurred on owner's premises when employee was arriving for work, injury arose out of the employment and recognizing that "courts in other jurisdictions have held that when a contractor's employee is performing work pursuant to a contract on another company's property, that property is considered the employer's property for worker's compensation purposes"); *Downey v. Vanderlinde Elec. Corp.*, 95 N.Y.S.2d 685, 686 (N.Y. App. Div. 1950) (finding place where employer's contract was being performed is deemed the employer's plant and is treated "in its facilities for ingress and egress as would such facilities of the employer's own plant"; thus, employee was entitled to compensation when injured in private parking lot available for those working on premises of third party for whom employer was doing electrical work).

The place of Cook's injury—the BP-owned road Cook was instructed to use to access the work area to which he was assigned by Condustrial's client—was brought within the scope of his employment with Condustrial as a requirement of his work.

Thus, for the reasons stated above, we reverse the Appellate Panel's findings addressing the premises rule and applicable exception to the going and coming rule. Cook's injuries arose out of and in the course of his employment because the injuries occurred on the premises of the BP plant to which he had been assigned, on a road he had been instructed to use to gain access to and exit his work site.

**REVERSED AND REMANDED.**

**THOMAS and HEWITT, JJ., concur.**