# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Francisco Cedano Ramirez, Employee, Appellant,

v.

May River Roofing, Inc., Employer, and American Zurich Insurance Co., Carrier, and Cedano Roofing, Employer, and Travelers Property & Casualty Co., Carrier,

Of which May River Roofing, Inc., American Zurich Insurance Co., and Travelers Property & Casualty Co. are Respondents.

Appellate Case No. 2018-000652

———————

Appeal From The Workers Compensation Commission
Appellate Panel

———————

Opinion No. 5827
Heard November 12, 2020 – Filed June 23, 2021

———————

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

———————

Joseph DuBois, of Liberty Oak Law Firm, LLC, of Hilton Head Island, for Appellant.

Lee E. Dixon, of Hedrick Gardner Kincheloe & Garofalo, LLP, and Nikole Deanna Haltiwanger, of Holder, Padgett, Littlejohn & Prickett, LLC, both of Columbia, for Respondents.

**HEWITT, J.:** Francisco Cedano Ramirez appeals the Workers' Compensation Commission's decision denying his claim for benefits. He argues the Commission erred in ruling he elected to be excluded from the policy he purchased from Travelers Insurance for his sole proprietorship. He also appeals the Commission's denial of his alternative claim that he was either a direct employee or a statutory employee of May River Roofing; a company with which he had a years-long continuous relationship. There is also an issue about average weekly wage, but the "compensability" issues are the core of this appeal.

The Commission correctly ruled Ramirez was not covered under the Travelers policy and was not May River's statutory employee. However, we reverse the ruling that Ramirez was not May River's direct employee based on our analysis of the four-factor employment test when applied to these facts. We also reverse the Commission's ruling that the parties stipulated to Ramirez's average weekly wage.

## FACTS

Ramirez earned a living as a roofer in Beaufort County and was the sole proprietor of Cedano Roofing. When he started the business, he purchased a general liability and workers' compensation insurance policy from Travelers. Ramirez did not elect to cover himself as an employee under the workers' compensation portion of the policy. Doing so would have significantly raised his insurance premium.

Ramirez began working with May River about a year after he started Cedano Roofing and worked continuously and exclusively with them for about three years. In January 2016, Ramirez was working on a job for May River when he fell approximately sixteen feet from the roof to the ground below. He sustained significant injuries to his back, neck, shoulders, chest, ribs, lungs, and upper extremities as a result of the fall.

Ramirez filed two workers' compensation claims arising from the accident. In one, he claimed he was May River's direct or statutory employee. In the other, he claimed he was covered under the Travelers policy he purchased for Cedano Roofing.

The Single Commissioner found Ramirez was not covered under the Travelers policy because he had elected not to cover himself. The Single Commissioner also found Ramirez was not May River's direct or statutory employee because he was an

independent contractor. The Single Commissioner further found the parties stipulated to Ramirez's average weekly wage.

Ramirez filed a Form 30 requesting review of the Single Commissioner's decision. After oral argument, an appellate panel affirmed the Single Commissioner's findings with little to no changes. This appeal followed.

## ISSUES

1. Whether Ramirez was excluded from coverage under the Travelers policy.

2. Whether Ramirez was May River's statutory employee.

3. Whether Ramirez was May River's direct employee.

4. Whether the parties stipulated to Ramirez's average weekly wage.

## STANDARD OF REVIEW

An appellate court normally owes deference to the Commission's factual findings because the Administrative Procedures Act mandates that those findings will stand unless they are clearly erroneous in the view of the reliable, probative, and substantial evidence on the record as a whole. *See Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 132-35, 276 S.E.2d 304, 305-06 (1981). But the question of whether an individual is an employee or independent contractor for the purposes of workers' compensation is jurisdictional; therefore, this court may take its own view of the preponderance of the evidence. *See Wilkinson v. Palmetto State Transp. Co.*, 382 S.C. 295, 299, 676 S.E.2d 700, 702 (2009); *S.C. Workers' Comp. Comm'n v. Ray Covington Realtors, Inc.*, 318 S.C. 546, 547, 459 S.E.2d 302, 303 (1995).

## COVERAGE UNDER THE TRAVELERS POLICY

Ramirez argues he is covered under the Travelers policy because the policy's plain language lists him as the "insured." He also argues the policy is the only evidence the Commission should have considered on this issue and that the Commission erred in looking outside the policy to Ramirez's application for coverage.

"Insurance policies are subject to the general rules of contract construction." *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 535, 514 S.E.2d 327, 330 (1999). "An insurer's obligation under [an insurance policy] is defined by the terms of the

policy and cannot be enlarged by judicial construction." *S.C. Ins. Co. v. White*, 301 S.C. 133, 137, 390 S.E.2d 471, 474 (Ct. App. 1990). "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." *B.L.G. Enters., Inc.*, 334 S.C. at 535, 514 S.E.2d at 330.

The Travelers policy has clear and unambiguous language stating that it is subject to the workers' compensation laws of South Carolina. The law hinges a sole proprietor's inclusion in his business's coverage on whether he notified his insurance company of an election to include himself as one of the business's employees. S.C. Code Ann. § 42-1-130 (2015); *see also Smith v. Squires Timber Co.*, 311 S.C. 321, 324-25, 428 S.E.2d 878, 880 (1993). The policy obligates Travelers to "pay promptly . . . the benefits required of you by the workers' compensation law." In plain English, the policy makes clear its purpose was not to protect Ramirez if he was injured. The policy protected him and his business by obligating Travelers to pay if someone else was injured and brought a claim against them.

The fact that the Travelers policy lists Ramirez as the "insured" has no bearing on whether the policy protected him in the event that he was hurt at work. As noted above, for the purpose of this policy, that question is controlled by whether Ramirez notified Travelers of his election to be included as one of the business's employees. Nothing in the policy bolsters Ramirez's argument that he elected to include himself. His application for coverage plainly reveals he chose to be excluded.

## STATUTORY EMPLOYEE

Ramirez argues he was May River's statutory employee. *See* S.C. Code Ann. §§ 42-1-400, -410, & -420 (2015) (the "statutory employment" provisions). Ramirez also cites the "certificate of insurance" statute as supporting his position. *See* S.C. Code Ann. § 42-1-415(A) (2015) (allowing upstream businesses to protect themselves against liability to statutory employees by securing proof that a subcontractor has workers' compensation insurance).

Settled law commands that Ramirez's "statutory employee" argument must fail. A sole proprietor's employees may be the statutory employees of another business, but the sole proprietor may not be a statutory employee. In *Smith v. T.H. Snipes & Sons, Inc.*, our supreme court said there were situations when a sole proprietor could be a statutory employee. 306 S.C. 289, 411 S.E.2d 439 (1991). Two years later, the court limited *Snipes* to its facts and held a subcontractor must elect coverage in order to be considered a statutory employee. *Squires Timber Co.*, 311 S.C. at 325 n.3, 428

S.E.2d at 880 n.3. Based on this binding precedent, South Carolina law does not support a finding that Ramirez was May River's statutory employee.

The "certificate of insurance" statute is also a dead end as far as compensability is concerned. *See* S.C. Code Ann. § 42-1-415(A) & (B) (2015). Even if May River failed to comply with this statute and did not properly secure proof Cedano Roofing had workers' compensation coverage, that failure would not turn May River into Ramirez's statutory employer. The effect of May River straying from the statute would be that May River could not transfer liability for a statutory employee's claim to the Uninsured Employers' Fund. The certificate of insurance statute controls who pays a statutory employee's claim. It has no bearing on who is (or is not) a statutory employee.

**DIRECT EMPLOYEE**

Ramirez argues the Commission erred in finding he was not May River's direct employee. "Under settled law, the determination of whether a claimant is an employee or independent contractor focuses on the issue of control, specifically whether the purported employer had the right to control the claimant in the performance of his work." *Wilkinson*, 382 S.C. at 299, 676 S.E.2d at 702. "In evaluating the right of control, the Court examines four factors which serve as a means of analyzing the work relationship as a whole: (1) direct evidence of the right or exercise of control; (2) furnishing of equipment; (3) method of payment; (4) right to fire." *Id.* As already noted, our standard of review on this issue is de novo. *Id.*

### 1. Right or Exercise of Control

Here, there are facts that weigh both for and against a finding that May River exercised control over Ramirez. In terms of regular supervision, there appears to be conflicting testimony. Ramirez says the owner of May River supervised his work and would sometimes give him directions. May River contends Ramirez had no supervision other than May River verifying his work once he completed a job. This dispute aside, everyone concedes Ramirez is a skilled roofer who did not need day-to-day supervision. To sum, there is little direct evidence May River controlled the finer points of how Ramirez went about his work as a roofer.

Some aspects of this relationship lend themselves to the view that Ramirez had a great deal of autonomy. Ramirez set his own schedule, did not punch a time clock, and was free to negotiate for additional payment when he arrived at a job site or choose to decline the job. Ramirez was also free to enlist others if the job was too

big for him to handle. He had the discretion to hire people to assist with his work and did not need May River's approval.

Still, there are also facts that show May River directly controlling Ramirez. Ramirez was required to wear May River branded t-shirts and display a magnetic May River decal on the side of his truck. May River claimed they gave the shirts out to everyone as a marketing strategy, but they also specifically required all "subcontractors" like Ramirez to wear May River shirts while at a jobsite.

The exclusivity of Ramirez's relationship with May River also weighs in favor of an employment relationship. Ramirez worked with May River continuously for roughly three years, and May River ceaselessly provided Ramirez with all of his work throughout their relationship. Ramirez believed he was not allowed to work with any other roofing companies. May River disputed this, but admitted it preferred workers like Ramirez to only accept jobs from May River. The apparent exclusivity of this relationship weighs in favor of finding May River exercised control over Ramirez. The fact that Ramirez relied on May River for work suggests May River had the right to control Ramirez by withholding work.

These features—an exclusive relationship and controlling Ramirez's clothing—may seem trivial, but we think they are not. An independent contractor is someone who is hired "to do a piece of work according to his own methods" and is not subject to anyone's control except as to the result of his or her work. *Chavis v. Watkins*, 256 S.C. 30, 32, 180 S.E.2d 648, 649 (1971). There is no disputing May River directly exercised control over Ramirez's appearance and, thus, was controlling more than would be found in a true independent contract relationship. The exclusivity of this arrangement also suggests Cedano Roofing was less an "independent" business, and more an extension of May River. *Cf. Watkins v. Mobil Oil Corp.*, 291 S.C. 62, 352 S.E.2d 284 (Ct. App. 1986) (agency between oil company and service station employee not established when employee was permitted to wear clothing with oil company's emblem, when service station merely sold oil company's products, and when there was no evidence oil company controlled station operations).

There is a previous appellate case involving roofers, but it is meaningfully distinguishable. In *Marlow v. E. L. Jones & Son, Inc.*, our supreme court found a roofer was an independent contractor for the purposes of workers' compensation. 248 S.C. 568, 569-71, 151 S.E.2d 747, 747-48 (1966). That claimant worked a full-time job in a textile mill and "moonlighted" with other members of his family as a roofer. *Id.* Although there are some similarities between *Marlow* and the present case, we believe the control May River exercised by being the exclusive

provider of work in his full time profession and by controlling Ramirez's appearance while working distinguishes this case from that one.

Based on the facts discussed above, we find May River had the right to and exercised control over Ramirez in a manner consistent with an employment relationship. Accordingly, we find this factor weighs in Ramirez's favor.

### 2. Furnishing Equipment

An owner who purchases and supplies equipment tends to retain the right to control how the equipment is used. The inference of control in this situation "is a matter of common sense and business." *Shatto v. McLeod Reg'l Med. Ctr.*, 406 S.C. 470, 479, 753 S.E.2d 416, 421 (2013) (quoting 3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 61.07[2] (2013)).

The furnishing of equipment prong weighs in favor of an employment relationship. May River provided Ramirez with all of the materials he used for roofing jobs. While Ramirez provided his own tools and vehicle, May River's complete assumption of the material costs suggests May River retained the right to direct how the materials were used and is direct evidence of control over Ramirez.

May River would also occasionally lend Ramirez equipment and assisted Ramirez financially when he purchased some of his own equipment. And, as mentioned above, May River provided Ramirez with a branded t-shirt and magnetic decal for his truck. Given that May River provided Ramirez with clothing, marketing materials, and the materials necessary to complete each roofing job, we find the furnishing equipment factor weighs in favor of an employment relationship.

### 3. Method of Payment

Payment based on time tends to show employment. *Id*. at 480, 753 S.E.2d at 421. Payment on the basis of a completed project tends to show the worker is an independent contractor. *Id*.

The method of payment factor weighs in favor of an independent contractor relationship. Though Ramirez was paid by the hour for repair work, most of his work was compensated "per roofing square;" as apparently is common in the roofing industry. In other words, for most of his work, Ramirez's compensation depended on how much work he did. It did not depend on the amount of time he spent working.

### 4. Right to Fire

The right to fire prong does not favor either party. Apparently there were individual contracts for each roofing job. These were typically executed before multi-day projects but after smaller, single day projects. The only sample contract in the record between Ramirez and May River was bare bones and of no help to our review of this issue.

The right to unilaterally and immediately end the relationship without future liability is a hallmark of an employment relationship. *Id*. at 481, 753 S.E.2d at 422. An independent contractor, however, typically has the right to complete the job unless the parties' agreement provides otherwise. *Id*. Nothing in this record points decisively in either direction.

It is possible to view Ramirez's continuous relationship as tending to show employment since it seems May River could stop offering jobs to Ramirez at any moment, for any reason, and leave Ramirez without recourse. Even so, we find this factor does not favor either party. There is little to nothing in the record suggesting what right May River had to terminate Ramirez from a job, what right Ramirez had to quit, and what claims (if any) the parties had against each other in those circumstances.

*****

The modern bellwether case on the employment test is *Wilkinson*. There, our supreme court found a sole proprietor working with a trucking company was an independent contractor. 382 S.C. at 300-04, 676 S.E.2d at 702-04. The trucking company had some drivers who were employees and other drivers with written independent contractor arrangements. Our supreme court examined and discussed the trucking company's entire operation in the course of finding the trucking company legitimately used the two categories of workers and that the company did not exercise sufficient control over the sole proprietor to indicate an employment relationship. *Id*.

Here, as there, we believe it is instructive to examine the putative employer's entire operation. Unlike the trucking company in *Wilkinson*, May River has no employees who perform roofing work other than the occasional repair. Unlike the trucking company in *Wilkinson*, there was no written and detailed independent contractor arrangement between Ramirez and May River. And, unlike the trucking company in *Wilkinson*, there was no requirement that Ramirez purchase coverage protecting himself against the risk he would be hurt in a workplace accident.

According to the record, May River switched some years ago from roofers who were admittedly employees to a roofing workforce consisting entirely of people purportedly classified as independent contractors. May River claims to have made this change for a variety of reasons, including that it found workers more motivated and responsible when they were paid more money as independent contractors and paid by the job rather than by the hour.

We do not doubt May River's sincerity or motivation. Still, the undisputed purpose of the Workers' Compensation Act is to protect workers, owners, and businesses by requiring a business covered by the Act to insure its workforce against the cost of industrial accidents. *Parker v. Williams & Madjanik, Inc.*, 275 S.C. 65, 70, 267 S.E.2d 524, 526 (1980); *Marchbanks v. Duke Power Co.,* 190 S.C. 336, 362, 2 S.E.2d 825, 836 (1939). This structure was designed to build the costs of industrial accidents into the cost of goods and services and to ultimately pass those costs to the consumers whose demand for the goods and services brought about the conditions that led to the claimant's injury. *Marchbanks,* 190 S.C. at 362, 2 S.E.2d at 836; *see also* 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 60.05[1] (2020).

We see this case as meaningfully different from *Wilkinson*, especially for the reasons noted above. If the record—as in *Wilkinson*—contained a detailed independent contractor agreement requiring Ramirez to protect himself against the cost of being hurt at work, we would likely feel differently. As it stands, we lean in favor of coverage based on the facts of this case and in order to serve the Act's beneficent purpose. *See James v. Anne's Inc.*, 390 S.C. 188, 198, 701 S.E.2d 730, 735 (2010) ("[T]he general rule [is] that workers' compensation law is to be liberally construed in favor of coverage in order to serve the beneficent purpose of the Act; only exceptions and restrictions on coverage are to be strictly construed.").

**AVERAGE WEEKLY WAGE**

Ramirez argues the Commission erred in finding the parties stipulated to his average weekly wage. There is no doubt the parties did not enter such a stipulation. The parties mentioned their diverging views at the beginning of the Single Commissioner's hearing. There is no evidence those views ever changed.

May River argues this issue is not preserved for our review. We respectfully disagree. Ramirez specifically raised the issue to the Commission in his addendum to his Form 30. He also discussed it in his brief to the appellate panel. Although it is fair to note he mentioned this in his argument on the "method of payment" factor

of the employment test, one cannot come away from the brief believing Ramirez agreed with the Single Commissioner's finding on his average weekly wage.

**CONCLUSION**

Based on the foregoing, we affirm the Commission's finding that Ramirez was not covered under the Travelers policy.  However, we reverse the Commission's compensability finding as to Ramirez's claim against May River.  We also reverse the finding that the parties stipulated to the compensation rate.  The case is remanded for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**THOMAS and HILL, JJ., concur.**