**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Rachel J. Turner, Employee, Appellant-Respondent,

v.

Medustrial Healthcare Staffing Service and Condustrial, Inc.; Guarantee Insurance Company; Countrywide Staffing Solutions Group, Inc.; South Carolina Department of Corrections; State Accident Fund; and South Carolina Uninsured Employer's Fund, Respondents

of which Condustrial, Inc., f/k/a Medustrial Healthcare Staffing Service, Employer, is the Respondent-Appellant.

Appellate Case No. 2021-000633

———————

Appeal From The Workers' Compensation Commission

———————

Unpublished Opinion No. 2024-UP-110
Heard February 6, 2024 – Filed March 27, 2024
Withdrawn, Substituted, and Refiled July 3, 2024

———————

**AFFIRMED IN PART AND REVERSED IN PART**

———————

Stephen Benjamin Samuels, of Samuels Reynolds Law Firm LLC, of Columbia, for Appellant/Respondent Rachel Turner.

George D. Gallagher, of Speed, Seta, Martin, Trivett & Stubley, LLC, of Columbia, for Respondent/Appellant Condustrial, Inc., f/k/a Medustrial Healthcare Staffing Services.

James Paul Newman, Jr., of Howser Newman & Besley, LLC, of Columbia; and Gregory Milam Alford, of Alford Law Firm LLC, of Hilton Head Island; both for Respondent Countrywide Staffing Solutions Group, Inc.

Erin Farrell Farthing and Edwin Pruitt Martin, Jr., both of South Carolina State Accident Fund, of Lexington, for Respondents South Carolina Department of Corrections and South Carolina State Accident Fund.

Grady Larry Beard, Beth B. Richardson, and Jasmine Denise Smith, all of Robinson Gray Stepp & Laffitte, LLC, of Columbia, for Respondent South Carolina Property and Casualty Insurance Guaranty.

Lisa C. Glover, of South Carolina State Accident Fund, of Lexington, for Respondent South Carolina Uninsured Employers' Fund.

---

**PER CURIAM:** This workers' compensation case arises from an incident that occurred while Rachel J. Turner was working as a contract nurse for the South Carolina Department of Corrections (SCDC) pursuant to its staffing agreement (SCDC Contract) with Condustrial, Inc., f/k/a Medustrial Healthcare Staffing Service (Condustrial). On appeal, Turner argues the Appellate Panel of the South Carolina Workers' Compensation Commission (Appellate Panel) erred by (1) finding she was not entitled to continuing temporary total disability from the date of her injury, (2) finding her average weekly wage should be based on wages paid by her employer, and (3) denying her motion to submit additional and after discovered evidence. On cross-appeal, Condustrial argues (1) Turner was an independent contractor and not an employee; (2) the Appellate Panel erred in holding Condustrial was uninsured because its service agreement (Service Agreement) with Countrywide Staffing Solutions Group, Inc. (Countrywide) included Turner's employment; (3) because Countrywide should be treated as a Professional Employer Organization (P.E.O.), it should be liable for Condustrial's

entire work force; and (4) Countrywide's carrier, Guarantee Insurance Company (Guarantee) provided coverage for Turner because coverage must follow the law. We affirm in part and reverse in part.

1.  Turner argues the Appellate Panel erred by finding she was not entitled to temporary total disability benefits after September 30, 2015.  We disagree.  *See* S.C. Code Ann. § 42-9-10 (2015) (stating Workers' Compensation claimants are entitled to total disability resulting from a work-related injury); S.C. Code Ann. § 42-1-120 (2015) (defining "disability" as an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."); *Jennings v. Chambers Dev. Co.*, 335 S.C. 249, 259, 516 S.E.2d 453, 458 (Ct. App. 1999) ("The [Appellate Panel's] decision must be affirmed if the factual findings are supported by substantial evidence in the record."); *id.* ("Substantial evidence is that evidence which, in considering the record as a whole, would allow reasonable minds to reach the conclusion the commission reached.").  Turner had the burden to prove she was entitled to temporary total disability, and this court defers to the Appellate Panel's determinations regarding credibility and weight given to evidence.  *See Lee v. Bondex, Inc.*, 406 S.C. 97, 102, 749 S.E.2d 155, 157 (Ct. App. 2013) ("The claimant bears the burden of proving entitlement to temporary disability compensation."); *id.* ("For temporary disability benefits, a claimant must prove only that work restrictions prevent h[er] from performing the job [s]he had before the injury, and that h[er] current employer has not offered h[er] light-duty employment."); *Fishburne v. ATI Sys. Int'l*, 384 S.C. 76, 85-86, 681 S.E.2d 595, 600 (Ct. App. 2009) ("In workers' compensation cases, the Appellate Panel is the ultimate finder of fact."); *id.* at 86, 681 S.E.2d at 600 ("The final determination of witness credibility and the weight to be accorded evidence is reserved for the Appellate Panel."); *Potter v. Spartanburg Sch. Dist. 7*, 395 S.C. 17, 23, 716 S.E.2d 123, 126 (Ct. App. 2011) (citations omitted) ("The Appellate Panel is given discretion to weigh and consider all the evidence, both lay and expert, when deciding whether causation has been established.  Thus, while medical testimony is entitled to great respect, the fact finder may disregard it if other competent evidence is presented.").  The Appellate Panel found Turner was not entitled to temporary total disability benefits after September 30, 2015, because Turner only provided documentation she was written out of work from September 16, 2015, through September 30, 2015.  Deferring to the Appellate Panel's credibility determination, we hold there was substantial evidence in the record to support the Appellate Panel's finding.

2.  Turner argues the Appellate Panel erred by finding Turner's average weekly wage was $761.21 and her compensation rate was $508.17.  She asserts the Single Commissioner correctly held her average weekly wage should "be based on gross wage records using the primary method set forth in the statute."  We agree.  As we discuss in more detail below, Turner was an employee of Condustrial; therefore, her average weekly wage must be calculated according to section 42-1-40 of the South Carolina Code (2015).  *See* S.C. Code Ann. § 42-1-40 ("'Average weekly wages' means the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury . . . ."); *Pilgrim v. Eaton*, 391 S.C. 38, 44, 703 S.E.2d 241, 244 (Ct. App. 2010) ("The primary method of calculation requires that '"[a]verage weekly wage" must be calculated by taking the total wages paid for the last four quarters . . . divided by fifty-two or by the actual number of weeks for which wages were paid, whichever is less.'" (quoting § 42-1-40)); *id*. at 44-45, 703 S.E.2d at 244 ("The commission **must** use this method unless 'the employment, prior to the injury, extended over a period of less than fifty-two weeks,' or unless 'for exceptional reasons' it would be unfair to do so." (emphasis added) (quoting § 42-1-40)); § 42-1-40 ("When for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury."); *Pilgrim*, 391 S.C. at 46 n.7, 703 S.E.2d at 245 n.7 ("[T]he third alternative method of calculation may not be used unless the first or second methods are 'impracticable.'" (citing § 42-1-40)).  The Appellate Panel must make a factual finding related to its reason for deviating from the primary method of calculation.  *See id*. at 45, 703 S.E.2d at 244 (finding the commission erred by not making "any factual findings showing which of the alternatives in the section was appropriate to use for calculating [the claimant's] average weekly wage"); *see also id*. at 45 n.6, 703 S.E.2d at 244 n.6 ("It is conceivable that the method used by the commission could have been employed under the 'exceptional reasons' alternative, but only if the commission made the requisite factual findings.").  The first method of calculation was not impracticable because Turner produced fifty-two weeks of wage records covering the third quarter of 2014 through the second quarter of 2015.  We find the Appellate Panel erred as a matter of law by calculating Turner's Average Weekly Wage through an alternative method without making a specific factual finding for why the first method was impracticable.  We reinstate the Single Commissioner's average weekly wage calculation of $1,130.86 and compensation rate of $753.94 as this calculation complied with the statutory requirement.

3.  Turner argues that the Appellate Panel should consider her newly discovered evidence.  We disagree.  The Appellate Panel's decision to review additional evidence is discretionary.  *See* S.C. Code Ann. Regs. 67-707 (2012) ("When additional evidence is necessary for the completion of the record in a case on review the Commission *may, in its discretion*, order such evidence taken before a Commissioner." (emphasis added)); Regs. 67-707(C) ("The moving party must establish the new evidence is of the same nature and character required for granting a new trial and show: (1) The evidence sought to be introduced is not evidence of cumulative or impeaching character but would likely have produced a different result had the evidence been procurable at the first hearing, and (2) The evidence was not known to the moving party at the time of the first hearing, by reasonable diligence the new evidence could not have been secured, and the discovery of the new evidence is being brought to the attention of the Commission immediately upon its discovery.").  The record does not show that Turner or her counsel attempted to secure these records until the Appellate Panel filed an unfavorable ruling in 2021–more than three years after the conclusion of the hearing in front of the single commissioner.  Therefore, the Appellate Panel did not err by denying Turner's Motion to Admit Newly Discovered Evidence.

4.  Condustrial argues the Appellate Panel erred in finding Turner was an employee rather than an independent contractor.  We disagree.  *See Lewis v. L.B. Dynasty*, 411 S.C. 637, 641, 770 S.E.2d 393, 395 (2015) ("Whether a claimant is an employee or independent contractor is a jurisdictional question and therefore the [appellate c]ourt may take its own view of the preponderance of the evidence."); *Sellers v. Tech Serv., Inc.*, 421 S.C. 30, 37, 803 S.E.2d 731, 735 (Ct. App. 2017) ("South Carolina's policy is to resolve jurisdictional doubts in favor of the inclusion of employers and employees under the Workers' Compensation Act." (quoting *Spivey v. D.G. Constr. Co.*, 321 S.C. 19, 21-22, 467 S.E.2d 117, 119 (Ct. App. 1996))); *Lewis*, 411 S.C. at 641, 770 S.E.2d at 395 ("The burden of proving the relationship of employer and employee is upon the claimant, and this proof must be made by the greater weight of the evidence."); *Shatto v. McLeod Reg'l Med. Ctr.*, 406 S.C. 470, 475, 753 S.E.2d 416, 419 (2013) ("[T]he determination of whether a claimant is an employee or independent contractor focuses on the issue of control, specifically whether the purported employer had the *right* to control the claimant in the performance of his work." (quoting *Wilkinson ex rel. Wilkinson v. Palmetto State Transp. Co.*, 382 S.C. 295, 299, 676 S.E.2d 700, 702 (2009))); *id.* at 475-76, 753 S.E.2d at 419 (explaining that in analyzing the work relationship as a whole, the appellate court examines four factors: "(1) direct evidence of the right or exercise of control; (2) furnishing of equipment; (3) method of payment; (4) right to fire." (quoting *Wilkinson*, 382 S.C. at 299, 676 S.E.2d at 702)); *Lewis*, 411

S.C. at 642, 770 S.E.2d at 395 ("Each factor is considered with equal force and the mere presence of one factor indicating an employment relationship is not dispositive of the inquiry.").

We hold a preponderance of the evidence shows Condustrial had the right to direct the nurses it provided to SCDC (the Nurses) as to "the time, place, degree, and amount of said services." *See Shatto*, 406 S.C. at 477, 753 S.E.2d at 420 ("The right to control does not require the dictation of the thinking and manner of performing the work. It is enough if the employer has the *right* to direct the person by whom the services are to be performed, the time, place, degree, and amount of said services." (quoting *Nelson v. Yellow Cab Co.*, 343 S.C. 102, 110, 538 S.E.2d 276, 280 (Ct. App. 2000), *overruled on other grounds by Wilkinson*, 382 S.C. at 300 n.3, 676 S.E.2d at 702 n.3)). For example, Condustrial demanded the right to approve all shifts the Nurses worked. Once the Nurses were on the SCDC schedule, Condustrial required them to give four-hour notice of cancellation by telephone prior to the shift's start to avoid punishment. Condustrial also required the Nurses to follow rules set by SCDC regarding their appearance and discussion of compensation. Furthermore, Condustrial delegated its right to control the Nurses to SCDC through the SCDC Contract. *See Kilgore Grp., Inc. v. S.C. Emp. Sec. Comm'n*, 313 S.C. 65, 69, 437 S.E.2d 48, 50 (1993) (stating the clients of a temporary agency gained their ability to exercise control over the workers' activities "solely from their contracts with [the temporary agency] and [the agency's] contract with the workers" and inferring the agency "possessed the right to control the workers' performance and the manner in which it was done and delegated that authority to its clients").

The furnishing of equipment factor also weighs in favor of an employment relationship because Turner did not provide her own equipment; instead, SCDC provided the Nurses with equipment and Condustrial covered the Nurses' liability and professional malpractice insurance. *See Wilkinson*, 382 S.C. 295, 303, 676 S.E.2d at 704 (finding the "furnishing of equipment" factor evidenced an independent contractor relationship because the claimant "owned his own tractor and paid for all costs associated with the tractor").

Next, Condustrial's method of paying Turner an hourly rate indicates an employment relationship. *See Shatto*, 406 S.C. at 480, 753 S.E.2d at 421 ("'Payment on a time basis is a strong indication of the status of employment,' while '[p]ayment on a completed project basis is indicative of independent contractor status.'" (alteration in original) (quoting 3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 61.06 (2013))). Finally, the right

to fire factor also weighs in favor of an employment relationship because many of the forms Condustrial required Turner to complete provided Condustrial had the right to fire her.

Condustrial asserts this court should follow the decision of the Department of Employment and Workforce (DEW), which applied the four-part test and concluded the Nurses were independent contractors. DEW's decision does not control our consideration of this case. *See Shelton v. Oscar Mayer Foods Corp.*, 325 S.C. 248, 254, 481 S.E.2d 706, 709 (1997) (stating the "findings of fact made during [a DEW] hearing will not be given preclusive effect in any subsequent litigation between the employer and employee").

Condustrial also contends Turner agreed to be an independent contractor by signing the Independent Contractor Agreement. Turner's execution of the Independent Contractor Agreement, however, was not dispositive of her employment relationship. *See Kilgore Grp., Inc.*, 313 S.C. at 68-69, 437 S.E.2d at 50 (stating that while "[t]he contract entered into by the parties must be considered in determining the nature of their relationship and has considerable weight[,]" the intent of the parties must be "gathered from the whole scope of the language used"); *id.* at 69, 437 S.E.2d at 50 ("[L]anguage in the contract merely declaring the relationship is that of an employer/independent contractor is not dispositive."). Here, Turner's initial employment application included the Independent Contractor Agreement along with numerous other forms that indicated an employer/employee relationship. The Independent Contractor Agreement was internally inconsistent in that the form purportedly required the Nurses to obtain their own liability insurance, but this section was marked not applicable and Condustrial provided the liability insurance for the Nurses. Furthermore, the Independent Contractor Agreement was inconsistent with Condustrial's own agreement with SCDC. The SCDC Contract provided the Nurses were "employees of [Condustrial] and not SCDC." It required Condustrial to "provide workers['] compensation insurance coverage for [Condustrial's] employees who are assigned to SCDC." Moreover, as stated above, the four factors weigh in favor of an employee relationship. *See Wilkinson*, 382 S.C. at 300, 676 S.E.2d at 702 ("In evaluating the four factors, we are guided initially by the parties' independent contractor agreement. But more importantly, we are guided by the parties' conduct, which mirrored the terms of the contract."). Accordingly, we hold Turner was Condustrial's employee.

5. Condustrial argues the Appellate Panel erred in finding it was uninsured because Turner's employment fell under its Service Agreement with Countrywide. We disagree. In order to make an employee be a Selected Staffing/Employee

according to the Service Agreement, Condustrial had to submit the employee for payroll "each applicable payroll period *at least three banking days prior to the date on which payroll is to be issued by [Countrywide]*" and Countrywide had to approve the employee's code and location.  Turner was an employee from her first day with Condustrial, but Condustrial failed to make her a Selected Staff/Employee by submitting her for payroll with Countrywide.  In addition, Countrywide never approved the class code that would apply to the Nurses.  Accordingly, we hold substantial evidence supports the Appellate Panel's finding that the Service Agreement did not provide coverage for Turner.  *See Jennings v. Chambers Dev. Co.*, 335 S.C. 249, 259, 516 S.E.2d 453, 458 (Ct. App. 1999) ("The [Appellate Panel's] decision must be affirmed if the factual findings are supported by substantial evidence in the record."); *id.* ("Substantial evidence is that evidence which, in considering the record as a whole, would allow reasonable minds to reach the conclusion the [Appellate Panel] reached.").

6.  Condustrial argues Countrywide is liable for the claim because (1) it was acting as a de facto P.E.O. under the Service Agreement with Condustrial even though it was not licensed as a P.E.O. in South Carolina, (2) it was liable for Condustrial's "entire work force" pursuant to sections 40-68-10 to -180 of the South Carolina Code (2011 & Supp. 2023); and (3) it is estopped via its conduct and misrepresentations.  We disagree.  The Service Agreement, which included an Amendment, did not provide that Countrywide was a P.E.O and did not provide for the terms a P.E.O. and client agreement must provide.  *See* § 40-68-70(A) ("A contract between a licensee and a client company must provide that the licensee: (1) reserves the right of direction and control over employees assigned to a client company; (2) assumes responsibility for the payment of wages to the assigned employees without regard to payments by the client to the licensee; (3) assumes responsibility for the payment of payroll taxes and collection of taxes from payroll on assigned employees; (4) retains the right to hire, fire, discipline, and reassign the assigned employees; (5) retains the right of direction and control over the adoption of employment and safety policies and the management of workers' compensation claims, claim filings, and related procedures on joint agreement by the client company and the licensee . . . .").  The Service Agreement provided for shared responsibility between Condustrial and Countrywide.  The Amendment to the Service Agreement further negated the terms required for a P.E.O. and provided that Condustrial would process the payroll, would make all of the necessary withholdings, pay the entities on behalf of the employees, pay the employees their net check, and would produce all W-2's for 2015; moreover all employees would be reported under Condustrial's Federal Employer Identification

Number and state tax account number.  In addition, the record does not include evidence the parties provided the Nurses with notice of a P.E.O. agreement as required by section 40-68-60.  *See* § 40-68-60(A) ("The licensee shall give written notice of the agreement as it affects assigned employees to each employee assigned to a client company in the manner provided in this section."); § 40-68-60(B) ("A written explanation of the agreement must be provided to each assigned employee by delivering it to the employee personally within ten days after executing the agreement.  The explanation must state, substantially, the terms of the agreement between the licensee and client company and include the same notice that is required to be posted in the client company's place of business.").

We hold the Service Agreement should not be reformed.  *See Progressive Max Ins. Co. v. Floating Caps, Inc.*, 405 S.C. 35, 51, 747 S.E.2d 178, 186 (2013) ("A contract may be reformed on the ground of mistake when the mistake is mutual and consists [of] the omission or insertion of some material element affecting the subject matter or the terms and stipulations of the contract, inconsistent with those of the parol agreement which necessarily preceded it." (alteration in original) (quoting *Crosby v. Protective Life Ins. Co.*, 293 S.C. 203, 206, 359 S.E.2d 298, 300 (Ct. App. 1987))); *id.* ("A mistake is mutual whe[n] both parties intended a certain thing and by mistake in the drafting did not obtain what was intended." (quoting *Crosby*, 293 S.C. at 206, 359 S.E.2d at 300)); *id.* ("Before equity will reform a contract, the existence of a mutual mistake must be shown by clear and convincing evidence." (quoting *Crosby*, 293 S.C. at 206, 359 S.E.2d at 300)).  Here, the parties did not omit by mistake the terms that would have made the arrangement fall within the P.E.O. statutes.  Condustrial's owner, Tony Durham, who was a sophisticated party, chose to "unbundle" the terms of a P.E.O. agreement so that the Service Agreement did not meet the statutory requirements because his objective was to obtain workers' compensation coverage and not the other services a P.E.O. provides.  The parties chose to allow Condustrial to designate the Selected Staff/Employees while authorizing Countrywide to decline classes that carried too much risk.

Similarly, we hold Countrywide should not be estopped from denying it is a P.E.O.  *See Strickland v. Strickland*, 375 S.C. 76, 84-85, 650 S.E.2d 465, 470 (2007) ("The elements of equitable estoppel as related to the party being estopped are: (1) conduct which amounts to a false representation, or conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention that such conduct shall be acted upon by the other party; and (3) actual or constructive

knowledge of the real facts. The party asserting estoppel must show: (1) lack of knowledge, and the means of knowledge, of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change of position in reliance on the conduct of the party being estopped."). Here, Condustrial did not rely on Countrywide being a licensed P.E.O or change its position based on that reliance because Condustrial did not want a P.E.O. and specifically negotiated for a contract that did not include all of the terms of a P.E.O. Accordingly, we hold substantial evidence supports the Appellate Panel's finding that the Service Agreement was not a P.E.O. contract and should not be treated as such. *See Jennings*, 335 S.C. at 259, 516 S.E.2d 458 (Ct. App. 1999) ("The [Appellate Panel's] decision must be affirmed if the factual findings are supported by substantial evidence in the record."); *id.* ("Substantial evidence is that evidence which, in considering the record as a whole, would allow reasonable minds to reach the conclusion the [Appellate Panel] reached.").

7. Condustrial argues the Appellate Panel erred in holding Guarantee was not liable for providing coverage in this case. We disagree. Here, only Countrywide was the named insured under the Guarantee policy; because Condustrial did not add the Nurses as Selected Staffing/Employees under the Service Agreement, they were not Countrywide's employees and, therefore were not insured under the Guarantee Policy. Avery Rebecca Barnett, an underwriter for Guarantee, stated Guarantee would not have provided coverage for the Nurses because the risk as presented would create extreme liability for Guarantee from an underwriting perspective. We find no error in the weight the Appellate Panel assigned her testimony as we defer to the Appellate Panel in its credibility findings. *See Houston v. Deloach & Deloach*, 378 S.C. 543, 551, 663 S.E.2d 85, 89 (Ct. App. 2008) ("The final determination of witness credibility and the weight assigned to the evidence is reserved to the [A]ppellate [P]anel."). Accordingly, we hold substantial evidence supports the Appellate Panel's finding that Guarantee did not provide coverage for the incident. *See Jennings*, 335 S.C. at 259, 516 S.E.2d 458 (Ct. App. 1999) ("The [Appellate Panel's] decision must be affirmed if the factual findings are supported by substantial evidence in the record."); *id.* ("Substantial evidence is that evidence which, in considering the record as a whole, would allow reasonable minds to reach the conclusion the [Appellate Panel] reached.").

**AFFIRMED IN PART AND REVERSED IN PART.**

**THOMAS, MCDONALD, and VERDIN, JJ., concur.**